Argued and submitted February 23; in A154999, affirmed, in A155359 and A155367, reversed and remanded November 30, 2016; petition for review denied June 1, 2017 (361 Or 425)

DEEP PHOTONICS CORPORATION,
a Delaware corporation,
*Plaintiff,*

*v.*

Joseph G. LaCHAPELLE, et al.,
*Defendants.*

James FIELD
and Joseph G. LaChapelle,
*Third-Party Plaintiffs-Respondents,*

*v.*

Dong Kwan KIM, et al.,
*Third-Party Defendants,*

*and*

Wayland BRILL
and Enterprise Law Group, Inc.,
a California corporation,
*Third-Party Defendants-Appellants.*

Washington County Circuit Court
C114435CV; A154999 (Control)

DEEP PHOTONICS CORPORATION,
a Delaware corporation,
*Plaintiff,*

*v.*

Joseph G. LaCHAPELLE, et al.,
*Defendants.*

James FIELD
and Joseph G. LaChapelle,
*Third-Party Plaintiffs-Appellants,*

*v.*

Dong Kwan KIM, et al.,
*Third-Party Defendants,*

*and*

Wayland BRILL
and Enterprise Law Group, Inc.,
a California corporation,
*Third-Party Defendants-Respondents.*

Washington County Circuit Court
C114435CV; A155359, A155367

385 P3d 1126

In A154999, Peter L. Weber argued the cause for appellants. With him on the briefs were Timothy J. Halloran and Murphy Pearson Bradley & Feeney, California, and Jonathan Henderson, William Davis, and Davis Rothwell Earle & Xochihua, P.C.

In A154999, Jeff S. Pitzer argued the cause for respondents. With him on the brief were Pitzer Law and Charles J. Paternoster and Parsons Farnell & Grein, LLP.

In A155359 and A155367, Jeff S. Pitzer argued the cause for appellants. With him on the briefs were Pitzer Law, Charles J. Paternoster and Parsons Farnell & Grein, LLP.

In A155359 and A155367, Peter L. Weber argued the cause for respondents. With him on the brief were Timothy J. Halloran and Murphy Pearson Bradley & Feeney, California, and Jonathan Henderson, William Davis, and Davis Rothwell Earle & Xochihua, P.C.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**TOOKEY, J.**

These consolidated appeals arise from the trial court's dismissal of a third-party complaint that Joseph LaChapelle and James Field (collectively plaintiffs) filed against Wayland Brill and Brill's law firm, Enterprise Law Group, Inc. (collectively defendants). Defendants filed a special motion to strike the third-party complaint under ORS 31.150, Oregon's anti-SLAPP[1] statute, and a separate motion to dismiss under ORCP 21 A(8). The trial court denied the special motion to strike, concluding that the claims alleged in the third-party complaint did not qualify for treatment under ORS 31.150. However, the trial court granted defendant's motion to dismiss under ORCP 21 A(8) based on its conclusion that Brill, a California attorney, was constrained under California law from using attorney-client privileged communications that were necessary to defendants' defense of the third-party complaint. Defendants appeal the trial court's denial of the special motion to strike, and plaintiffs appeal the trial court's grant of defendants' motion to dismiss.

We conclude that the trial court did not err in denying the special motion to strike because plaintiffs' claims against defendants did not "arise out of" protected activity under ORS 31.150(2). However, we conclude that the trial court did err in granting defendants' motion to dismiss under ORCP 21 A(8). That is so because not all of the claims against defendants, on the face of the third-party complaint, implicate the attorney-client privilege as a barrier to defendants mounting a defense against those claims and, for the one claim that does—a derivative legal malpractice claim—the trial court's dismissal was premature. Accordingly, we affirm on defendants' appeal (A154999), and we reverse and remand for further proceedings on plaintiffs' appeals (A155359, A155367).

## BACKGROUND

On review from a motion to dismiss under ORCP 21 A(8), "we accept as true all well-pleaded allegations in the complaint and give plaintiff the benefit of all favorable

---

[1] SLAPP stands for "strategic lawsuits against public participation."

inferences that may be drawn from the facts alleged." *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). On review from a special motion to strike, we take the facts from the complaint and also from the supporting and opposing affidavits, ORS 31.150(4), and view the facts in the light most favorable to the plaintiff. *Plotkin v. SAIF*, 280 Or App 812, 815, 385 P3d 1167 (2016). With regard to the affidavits filed in connection with defendants' special motion to strike, we consider those additional facts only in the section of this opinion that analyzes the special motion to strike. Here, for purposes of background, we set forth the facts from plaintiffs' third-party complaint,[2] which are relevant to our review of both the special motion to strike and the motion to dismiss.

Plaintiffs, LaChapelle and Field, are shareholders in a company called Deep Photonics Corporation (DPC), which was incorporated in Delaware and headquartered in Oregon. DPC was formed in 2004 by LaChapelle and Ted Alekel to manufacture lasers and crystals that Alekel had developed that could be used in laser technology. Until the fall of 2009, LaChapelle was the CEO and a director of DPC, and Field was employed by DPC to develop customers and markets for DPC's technology. Defendant Brill, an attorney licensed only in California, is DPC's general counsel and secretary. Brill is the majority shareholder of his law firm, defendant Enterprise Law Group. ELG Partners, an entity controlled by Enterprise Law Group, is a DPC shareholder. The other directors of DPC, who along with ELG Partners also make up the majority shareholders, are Alekel, Dong Kwan Kim, Bruce Juhola, and Roy Knoth.

In 2008, LaChapelle learned that Alekel's crystal technology could not be replicated in DPC's lab and, accordingly, initiated an investigation of Alekel's claimed research. LaChapelle then brought his concerns to the attention of Brill and the other directors. According to the third-party complaint,

_____

[2] LaChapelle and Field each filed their own separate third-party complaints. However, those complaints appear to be substantively identical, and none of the parties claim that they contain differences that are relevant on appeal. Accordingly, for ease of reference, we use the singular, "third-party complaint," throughout this opinion.

"instead of acting on the evidence LaChapelle presented and conducting a thorough investigation, the board instead hired a lawyer who, at Brill's direction, effectively papered over the alarming evidence LaChapelle had uncovered. The lawyer did this by conducting a sham investigation that was, in actuality, not an investigation at all. This was because Brill expressly instructed the lawyer not to interview the specific witnesses who had represented to LaChapelle that Alekel's claims about his research were false."

After receiving a report of the investigation Brill arranged, the board of directors took no further action with respect to the investigation, made Alekel president of DPC, and allocated new investment in Alekel's crystal. LaChapelle, however, developed and began implementing a plan to focus on manufacturing and marketing lasers that did not use Alekel's crystal.

In the fall of 2009, DPC terminated LaChapelle as CEO and as a director, terminated Field and other DPC employees, shut down its Oregon operations, and transferred assets and operations to Korea to be placed under Kim's, or his company's, control. LaChapelle and Field allege that this was accomplished through a conspiracy between the directors and Brill, and resulted in defendants obtaining significant financial and other benefits to the detriment of DPC. After those actions, LaChapelle and Field, who remained shareholders of DPC, received no information about DPC or its activities.

In 2011, DPC brought a complaint against, among others, LaChapelle and Field, seeking damages in the amount of $75 million, based primarily on claims that, in 2009, they had improperly removed or transferred the assets, intellectual property, and trade secrets of DPC to put to their own use. In turn, LaChapelle and Field brought, as plaintiffs, the third-party complaint that is the subject of this appeal.

In the third-party complaint, plaintiffs brought derivative and individual claims against defendants Brill and Enterprise Law Group, and the directors of DPC, seeking $75 million in damages. As relevant on appeal,

plaintiffs alleged in Count 2 of their derivative claim that Brill breached his fiduciary duty, along with the directors, by taking actions that enriched Kim's company and themselves at the expense of DPC, failing to take any effective action about the concerns with Alekel's crystal, deciding to fire LaChapelle and shut down the Oregon operations, making Alekel president and allocating new investment in his crystal, and approving DPC's lawsuit without understanding that DPC would be responsible for advancing defense costs of certain defendants pursuant to DPC's bylaws and Delaware law. Plaintiffs also alleged in Count 2 that defendants, as DPC corporate counsel, were also "independently negligent in failing to advise the company of its advancement obligations and/or the consequences of ignoring them."

In Count 3 of their derivative claim, plaintiffs alleged that defendants breached their fiduciary duty, as corporate counsel, and Brill, as DPC secretary, by

"affirmatively advis[ing] and assist[ing] in the conspiracy to fire LaChapelle and shut down the company's Oregon operations in order to transfer them to Korea, which according to [DPC's] own complaint, has resulted in the value of the company declining by $75 million[,] *** for substantially assisting, aiding, and abetting those directors in breaching their fiduciary duties, with knowledge that the directors' conduct was a breach of fiduciary duty[,] *** fail[ing] to advise the company to follow up in a thorough and professional manner on the evidence presented by LaChapelle concerning the integrity of Alekel's crystal[, and] *** committ[ing] malpractice by approving DPC's filing of a $75 million lawsuit against multiple defendants without considering that DPC would be responsible for advancing the defense costs of certain defendants pursuant to DPC bylaws and applicable Delaware law[.]"

In his individual claim for breach of fiduciary duty, LaChapelle alleged that Enterprise Law Group, as one of the shareholders comprising the majority of DPC's shareholders, "engaged in a course of oppressive conduct *** [including] to force LaChapelle from the company, freeze him out, and give his position and authority over to themselves for their own benefit, all of which resulted in the destruction

of the company, as demonstrated by its current residence in bankruptcy."[3]

Defendants filed both a special motion to strike the third-party complaint as against Brill, under ORS 31.150, and a motion to dismiss the third-party complaint for failure to state a claim as against both defendants, under ORCP 21 A(8). On the motion to strike, the court concluded that the claims against Brill did not arise from protected activity set out in ORS 31.150 and, on that basis, denied the motion and entered a limited judgment as required by ORS 31.150(1). Defendants appeal that limited judgment. On the motion to dismiss, the trial court granted it with prejudice as to the claims against defendants because their defense was dependent upon attorney-client privileged communications between Brill and DPC. The court entered a limited judgment for defendants on the third-party complaint, and plaintiffs appeal that judgment.

## ANTI-SLAPP SPECIAL MOTION TO STRIKE

We first address defendants' appeal of the trial court's denial of their special motion to strike. Under ORS 31.150(3), a court engages in a two-step burden-shifting process to resolve a special motion to strike filed under the Oregon anti-SLAPP statute. *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013). First, the court must determine whether the defendant filing the motion has met its *prima facie* burden to show that the claim "arises out of a statement, document or conduct described in subsection (2)." ORS 31.150(3). Second, if the defendant meets that burden, "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* Both steps of that analysis present a question of law that we review for legal error. *Neumann v. Liles*, 261 Or App 567, 572, 323 P3d 521 (2014), *rev'd on other grounds*, 358 Or 706, 369 P3d 1117 (2016). In this case, we conclude that defendants did not meet their burden under the first step of the analysis, and, thus, the trial court did not err in denying defendants' special motion to strike.

---

[3] Field did not bring an individual claim against defendants.

Defendants had the burden to show that the claims brought against them in plaintiffs' third-party complaint "arise[] out of" one of the following:

"(a)  Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b)  Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c)  Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d)  Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

ORS 31.150(2). On appeal, and as explained in more detail below, defendants argue that subsections (2)(b) and (2)(d)[4] apply to plaintiffs' claims against Brill, and, to the extent that those subsections do not sweep in all of plaintiffs' claims, defendants assert that the remaining claims are only incidental to the protected activity and, thus, also fall within ORS 31.150(2).

We begin by addressing defendants' arguments under subsection (2)(d). That subsection provides that a claim that arises out of "[a]ny other conduct in further-ance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" is subject to an anti-SLAPP motion. Whether a claim arises out of conduct described in subsection (2)(d) is an inquiry into "more gen-erally what sort of claim this is." *Mullen v. Meredith Corp.*, 271 Or App 698, 705, 353 P3d 598 (2015).

Defendants argue that the claims against Brill arise from conduct in furtherance of DPC's right to petition

---

[4] To the extent defendants argued in their reply brief or at oral argument that ORS 31.150(2)(a) also applies, we do not address that argument because it was raised too late and was insufficiently developed for appellate review.

because plaintiffs' claims are based on legal advice Brill gave to DPC related to the filing of DPC's lawsuit against plaintiffs. In so arguing, defendants assert that the conduct, which is in furtherance of the right of petition, need not be "in connection with a public issue or an issue of public interest."

We need not determine whether the claims asserted by plaintiffs against Brill arise from conduct "in further-ance of the constitutional right to petition" because defen-dants argument that the conduct need not be "in connection with a public issue or an issue of public interest" is contrary to the plain wording of subsection (2)(d). In arguing other-wise, defendants misread the grammatical construction of the subsection, which makes the phrase "in connection with a public issue or an issue of public interest" connected *both* to conduct in furtherance of the right of petition and conduct in furtherance of the right of free speech. The only public issue or issue of public interest that defendants point to is the exercise of the right of petition in and of itself. However, if that were sufficient under the statute, then the phrase, "in connection with a public issue or an issue of public interest," would be unnecessary; thus, we reject defendants' argu-ment. Because defendants do not provide a basis on which Brill's conduct could be considered "in connection with a public issue or an issue of public interest," and because we do not readily discern a public interest from these lawsuits which involve the conduct among directors, officers, and shareholders of a private, closely-held corporation, we con-clude that defendants did not meet their burden to make a *prima facie* showing that subsection (2)(d) applies to plain-tiffs' third-party claims against Brill.

We next turn to defendants' argument that subsec-tion (2)(b) applies. That subsection provides that a claim that arises out of "[a]ny oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, exec-utive or judicial body or other proceeding authorized by law" is subject to an anti-SLAPP motion.

In connection with that subsection, defendants argue that Brill's approving the lawsuit against plaintiffs

and failing to inform plaintiffs of DPC's status after their termination is all conduct in anticipation of litigation that is protected under subsection (2)(b), based on California case law.[5] Likewise, defendants argue that any of Brill's conduct surrounding Alekel's alleged fraud was conduct caused by plaintiffs, done in Brill's capacity as corporate counsel to DPC, and related to the underlying basis of the lawsuit filed against plaintiffs. Thus, defendants argue that all of that conduct was also in connection to the litigation and protected activity under subsection (2)(b).

We first note that ORS 31.150(2)(b) does not include the public issue or public interest wording that is included in subsection (2)(d), and, thus, we reject plaintiffs' argument to the extent they assert that the public interest requirement also applies to subsection (2)(b). Rather, as relevant here, subsection (2)(b) focuses on claims that arise out of written or oral statements made or submitted "in connection with an issue under consideration by * * * a judicial body." That subsection plainly covers statements made or documents submitted in connection with a case after it comes "under consideration" by a court, such as, for example, pleadings filed with a court or statements made by an attorney or a

---

[5] The Oregon legislature modeled Oregon's anti-SLAPP statute on California's anti-SLAPP statute and "intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to 31.155." *Page v. Parsons*, 249 Or App 445, 461-62, 277 P3d 609 (2012) (discussing legislative history of Oregon's anti-SLAPP statute). However, in considering California case law in the anti-SLAPP context, we are mindful of the caution noted by the Supreme Court, in another context, on relying on case law interpreting the meaning of a parent statute in determining the meaning of an Oregon law modeled on that parent statute. In *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014), the court noted,

"Court decisions that existed at the time that the legislature enacted a statute—and that, as a result, it could have been aware of—may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision. * * * That is so especially as to case law interpreting the wording of a statute borrowed from another jurisdiction. * * *

"Case law published after enactment—of which the legislature could not have been aware—is another matter. That is not to say that later-decided * * * cases cannot be persuasive. Decisions from other jurisdictions may carry weight, based on the force of the reasoning and analysis that supports them. *See, e.g., State v. Walker*, 356 Or 4, 24, 333 P3d 316 (2014) (post-enactment cases from other jurisdictions 'still may be consulted for their persuasive value'). But the fact that they involve similarly worded statutes, by itself, does not make those decisions controlling."

witness at a hearing. What is not so clear from the plain text is what, if any, conduct it covers that occurs before an issue becomes "under consideration" by a court. Defendants, relying on several California cases, assert that subsection (2)(b) covers communications made "in anticipation of litigation" and that, thus, it sweeps in plaintiffs' claims against Brill which defendants assert are based on Brill's pre-litigation conduct of advising DPC. We, however, decline to decide whether subsection (2)(b) is as broad as California's version of the statute because, even under the California case law that defendants urge us to apply, defendants have failed to meet their burden under the anti-SLAPP statute's first prong.

In California, under a part of its anti-SLAPP statute that is identically-worded to ORS 31.150(2)(b), the California Supreme Court has concluded that anti-SLAPP protection extends to statements made preparatory to or in anticipation of litigation. *Briggs v. Eden Counsel for Hope & Opportunity*, 19 Cal 4th 1106, 1115, 969 P2d 564, 569 (1999) (citing *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal App 4th 777, 784, 54 Cal Rptr 2d 830, 835, *rev den*, (1996)). The court's conclusion in that respect was based on California's statutory litigation privilege, *id.*, which covers statements "reasonably related" to pending or contemplated litigation that are made "in anticipation of litigation 'contemplated in good faith belief and under serious consideration.'" *Neville v. Chudacoff*, 160 Cal App 4th 1255, 1268, 73 Cal Rptr 3d 383, 393, *rev den* (2008). However, the California Supreme Court has also clarified that the anti-SLAPP protections and the litigation privilege are not co-extensive because they are not substantively the same nor do they serve the same purposes. *Flatley v. Mauro*, 39 Cal 4th 299, 323-24, 139 P3d 2, 18 (2006).

As a result, although California courts have used the litigation privilege as an aid in construing the scope of protected petitioning activity under its anti-SLAPP statute, the inquiry of California courts in such matters remain focused on whether the claims against which a special motion to strike is brought *arose from* protected petitioning activity, and not on the test used to apply the litigation privilege. *See Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal

App 4th 1532, 1537, 52 Cal Rptr 3d 712, 716 (2006), *rev den* (2007) ("Although a party's litigation-related activities constitute 'act[s] in furtherance of a person's right of petition or free speech,' it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute. To qualify for anti-SLAPP protection, the moving party must demonstrate the claim 'arises from' those activities."). By so focusing the inquiry, California courts have concluded that claims that do not fall within the anti-SLAPP protection include (1) claims arising from petitioning activity that was illegal as a matter of law, *Flatley*, 39 Cal 4th at 319-20, 139 P3d at 15, and (2) claims arising from "garden variety" legal malpractice actions because the claim arises from the breach of the attorney's duty and not from the petitioning activity itself, *Kolar*, 145 Cal App 4th at 1540, 52 Cal Rptr 3d at 718.

We turn to the legal question of whether plaintiffs' claims against Brill arose from conduct that comes within the scope of protected petitioning activity, and conclude that they do not. As noted earlier, in reviewing a trial court's ruling on a special motion to strike, "we take the facts from the pleadings and from the supporting and opposing declarations and affidavits submitted to the trial court, ORS 31.150(4), and we view the facts underlying [the] plaintiff's claim in the light most favorable to [the] plaintiff." *Plotkin*, 280 Or App at 815. In undertaking that review, we do not decide the facts or weigh the evidence. Rather, we consider the evidence and draw the reasonable inferences from that evidence in favor of the plaintiff and consider the defendant's opposing evidence only to determine if it defeats that submitted by the plaintiff as a matter of law. *Id.* at 815-16.

Here, the parties dispute what the conduct is from which plaintiffs' claims "arise out of." As a result, we necessarily must view the evidence on that factual question in the light most favorable to plaintiffs. Based on the affidavits submitted, and plaintiffs' third-party complaint, the conduct of Brill from which plaintiffs' claims arise include allegations that Brill (1) advised and assisted in covering up the concerns about Alekel's crystal, firing LaChapelle, shutting down DPC's Oregon operations, and transferring assets or intellectual property to Korea to DPC's financial detriment

and in violation of the directors' fiduciary duties, (2) committed legal malpractice by failing to advise DPC of its advancement obligations under DPC's bylaws in connection with the lawsuit brought against plaintiffs, and (3) participated in "freezing out" plaintiffs, as minority shareholders, from DPC's business.

Although, as discussed above, under California case law, statements made (including legal advice given) in good-faith anticipation of litigation can come within the anti-SLAPP protections when the claims arise from that petitioning activity, none of Brill's conduct that forms the basis of plaintiffs' claims meets that standard. With regard to Brill's actions in guiding the investigation of, and DPC's response to, LaChapelle's concerns about Alekel's crystal, none of the alleged conduct was a statement made, or a writing submitted, in good-faith anticipation of litigation. Defendants' bald assertion to the contrary is deficient on its face. There is no indication in any of the evidence submitted by either party that, *at the time Brill engaged in the alleged conduct,* any related litigation was contemplated or that Brill's actions were specifically taken in relation to such anticipated litigation. The exact same observations apply to Brill's alleged conduct in conspiring or aiding the directors in firing plaintiffs and transferring DPC's assets and intellectual property, and in "freezing out" plaintiffs from DPC's business.

The closest conduct, and the conduct on which defendants primarily base their arguments, regards plaintiffs' claim in the third-party complaint that Brill provided negligent advice to DPC about its obligations under DPC's bylaws, and negligent advice about the consequences of ignoring those obligations if it went forward with its lawsuit against plaintiffs. Defendants argue that that conduct clearly involves statements made in anticipation of litigation because they are based on Brill's "approval" of the filing of the lawsuit. We disagree with that characterization.

To "arise out of" the conduct described in subsection (2)(b), the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it. *See Kolar,* 145 Cal App 4th at 1537, 52 Cal Rptr

3d at 716 ("A cause of action may be 'triggered by' or associated with a protected act, but it does not mean the cause or action *arises* from that act."). Plaintiffs' claims do not "arise out of" statements that Brill made to DPC in anticipation of litigation (or, indeed, his "approval" of the lawsuit). Rather, plaintiffs' claims "arise out of" Brill's *failure* to give competent legal advice to DPC, which is not an act in furtherance of the right to petition. In other words, plaintiffs' claim is not based on Brill's act of advising DPC to bring a lawsuit; it is based on Brill not competently representing DPC's interests when he did so. That plaintiffs' claim was pled as a derivative legal malpractice claim does not change the nature of the acts from which the alleged liability arises—it remains that the nature of those acts are "garden variety" legal malpractice and not petitioning activity. *Id.* at 1540, 52 Cal Rptr 3d at 718 (holding the defendant did not make showing under first prong where the plaintiff's claims arose from the defendant's alleged legal malpractice and not from protected petitioning activity); *see also Chodos v. Cole*, 210 Cal App 4th 692, 705, 148 Cal Rptr 3d 451, 460 (2012), *rev den* (2013) ("If an act of malpractice by an attorney alleged by a client is not petitioning or free speech under the anti-SLAPP statute, that same act for the same client should not be deemed to be such petitioning or free speech solely because it is the basis of a claim for indemnity by someone other than the client.").

We thus conclude that defendants failed to make a *prima facie* showing that plaintiffs' claims against Brill came within either subsection (2)(d) or (2)(b) of ORS 31.150. Accordingly, we affirm the trial court's dismissal of defendants' special motion to strike.

## MOTION TO DISMISS UNDER ORCP 21 A(8)

We turn to the trial court's grant of defendants' motion to dismiss the third-party complaint under ORCP 21 A(8). Below, defendants argued that the third-party complaint should be dismissed because their defense was dependent upon attorney-client privileged communications between Brill and DPC and DPC was not agreeing to waive the privilege. Defendants' argument was based primarily on a California case, *McDermott, Will & Emery v. Superior*

*Court*, 83 Cal App 4th 378, 385, 99 Cal Rptr 2d 622, *rev den* (2000), in which the California Court of Appeals held that a derivative legal malpractice action brought by a minority shareholder could not proceed because the court "simply [could] not conceive how an attorney is to mount a defense in a shareholder derivative action alleging breach of duty to the corporate client, where * * * the attorney is foreclosed * * * from disclosing the very communications which are alleged to constitute a breach of that duty." Here, the court granted defendants' motion to dismiss the third-party complaint with prejudice based on *McDermott*. The trial court reasoned that, because Brill is licensed to practice law only in California and was subject to California professional ethics rules, it should apply the rule from *McDermott*, even though the trial court acknowledged that it might reach a different result under Oregon law.

We review the trial court's grant of a motion to dismiss under ORCP 21 A(8) for errors of law. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). "ORCP 21 A(8) decisions on a motion to dismiss for failure to state a claim may not be granted on the basis of anything other than the body of the pleadings themselves. * * * A challenge to the legal sufficiency of a claim that requires the court to examine documents other than the pleadings must be pursued via a summary judgment motion." *Rogers v. Valley Bronze of Oregon, Inc.*, 178 Or App 64, 69 n 3, 35 P3d 1102 (2001). Thus, where, as here, a defendant's ORCP 21 A(8) challenge is based on a defense to otherwise well-pleaded claims, "[t]hat defense is available on an ORCP 21 A(8) motion only if it appears on the face of the complaint." *Mark v. Dept. of Fish and Wildlife*, 158 Or App 355, 357 n 1, 974 P2d 716, *rev den*, 329 Or 479 (1999). On review of a grant of dismissal under ORCP 21 A(8), "we accept as true all well-pleaded allegations in the complaint and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged." *Granewich*, 329 Or at 51.

We start with the question of what law applies in this matter. Plaintiffs assert that the trial court erred in applying California law because the issue is the application of Oregon's attorney-client privilege, which is a rule

of evidence. We agree. In a case recently interpreting an aspect of the attorney-client privilege, the Oregon Supreme Court rejected the defendant's argument that Washington law pertaining to the scope of the privilege applied because the subject communications occurred between Washington-licensed attorneys in Washington. In rejecting the application of Washington law to the litigation in Oregon, the court stated, "It is well established in this state that Oregon applies its own rules prescribing how litigation shall be conducted, including its own evidentiary rules." *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 491, 326 P3d 1181 (2014) (citing *Equitable Life Assurance v. McKay*, 306 Or 493, 497-98, 760 P2d 871 (1988)). Thus, the trial court erred in concluding that it should apply California law on the basis that Brill is a California lawyer.

The trial court's concern that applying Oregon law could subject Brill to discipline in California under California ethics rules was not a valid reason to ignore established Oregon law and apply California evidence rules in an Oregon case. Ethics rules governing the practice of law have no bearing on our interpretation of statutory evidence rules, including the attorney-client privilege. *Id.* at 501 ("As in [*State v. Miller*, 300 Or 203, 709 P2d 225 (1985)], rules of professional conduct may require or prohibit certain conduct, and the breach of those rules may lead to disciplinary proceedings. But that has no bearing on the interpretation or application of a rule of evidence that clearly applies."). We thus reject defendants' arguments related to the application of California law. However, to the extent we find the California case law persuasive and relevant to our analysis, we will consider it.

For purposes of our discussion, we assume, without deciding, that Oregon law would recognize a defense to liability based on the attorney-client privilege. *See Reynolds v. Schrock*, 341 Or 338, 351, 142 P3d 1062 (2006) (discussing similar principles based on the litigation privilege). We thus start with a brief explanation of the scope and application of Oregon's attorney-client privilege, and its exceptions. The attorney-client privilege, OEC 503, is codified in ORS 40.225, which provides, in relevant part:

"(2)   A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a)   Between the client or the client's representative and the client's lawyer or a representative of the lawyer[.]"

Thus, a claim of privilege generally may be asserted if (1) the communication is between a "client" or "a representative of the client" and the client's "lawyer," as those terms are defined in OEC 503, (2) the communication is a "confidential communication," as defined in OEC 503, and (3) the communication is "made for the purpose of facilitating the rendition of professional legal services to the client."[6] *Crimson Trace Corp.*, 355 Or at 486 (quoting OEC 503). However, the attorney-client privilege is not absolute; it may be waived by the client voluntarily, OEC 511, or one of the enumerated exceptions in OEC 503(4) may apply. Those exceptions are as follows:

"(4)   There is no privilege under this section:

"(a)   If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;

---

[6] OEC 503(1) defines those terms as follows:

"(a) 'Client' means a person, public officer, corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

"(b) 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

"(c) 'Lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

"(d) 'Representative of the client' means:

"(A) A principal, an officer or a director of the client; or

"(B) A person who has authority to obtain professional legal services, or to act on legal advice rendered, on behalf of the client, or a person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the person's scope of employment for the client."

"(b) As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction;

"(c) As to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer;

"(d) As to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness; or

"(e) As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients."

OEC 503(4). Those enumerated exceptions are the exclusive exceptions to the attorney-client privilege in Oregon. *Crimson Trace Corp.*, 355 Or at 501.

Thus, to the extent such a defense is available in Oregon, to make out a complete defense based on the attorney-client privilege, on a motion to dismiss under ORCP 21 A(8), a defendant must show that the attorney-client privilege applies to all of the allegations in the complaint such that it prevents the defendant from mounting an effective defense. That requires a defendant to show that it is apparent on the face of the complaint that attorney-client protected communications exist that are necessary to the defense of the complaint and that the client has not waived the privilege under OEC 511 with respect to those communications. In turn, a plaintiff thus may defeat that showing on a motion to dismiss if the allegations in the complaint support a reasonable inference that the attorney was not acting in his or her capacity as legal counsel to the client (*i.e.*, acting outside the attorney-client relationship), or that an exception in OEC 503(4) applies to the attorney-client privileged communications that are necessary to the attorney's defense. *Cf. Reynolds*, 341 Or at 351 (litigation privilege does not apply with respect to claims by third party against a lawyer for aiding the lawyer's client in breaching a fiduciary duty to the third party if the third party shows that the

lawyer was acting outside the attorney-client relationship or the "crime or fraud" exception to attorney-client privilege applies).

Here, the trial court erred in granting defendants' motion to dismiss the entire third-party complaint because it is not apparent on the face of the third-party complaint that the attorney-client privilege prevented defendants from defending against all of the claims against them. With regard to the application of the privilege to defendants' alleged conduct, the privilege would only apply with respect to communications made when Brill was acting in his capacity as corporate counsel to DPC, that is, when the communications were "made for the purpose of facilitating the rendition of professional legal services to [DPC]." OEC 503(2). Here, taking the allegations and all reasonable inferences from those allegations as true, there are two sets of allegations against defendants that fall outside that attorney-client relationship and thus do not, on their face, implicate the attorney-client privilege as a barrier to defendants mounting a defense.

First, with respect to plaintiffs' derivative action, based on the well-pleaded allegations in the third-party complaint, Brill was not acting as legal counsel to DPC with respect to any of the allegations that he aided or conspired with the directors in breaching their fiduciary duties to DPC, which include the allegations of facilitating a cover-up of Alekel's alleged fraud, firing plaintiffs, shutting down the Oregon operations, and transferring DPC's assets to Kim's control. That is so because such alleged acts were not taken by Brill for the purpose of rendering legal services to DPC— the only client—nor were they acts taken by the directors, as client representatives, to obtain legal services for DPC. Rather, those are alleged acts that were taken against DPC's interests, and in the self-interest of the directors and defendants, and thus were acts that fell outside of the attorney-client relationship between Brill and DPC. The third-party complaint also alleges that those actions were provided outside the scope of the attorney-client relationship and were not privileged. *Cf. Reynolds*, 341 Or at 351 (the rule that a lawyer cannot be liable for a client's breach of a fiduciary duty to a third party does not apply when the lawyer acts

outside the attorney-client relationship for that client, which includes "not protect[ing] lawyer conduct that is unrelated to the representation of a client" and "not protect[ing] lawyers who are representing clients but who act only in their own self-interest and contrary to their client's interest").

Second, with respect to LaChapelle's direct action, Enterprise Law Group was not acting in the capacity of legal counsel to DPC when it engaged in oppressive conduct *as a shareholder* against plaintiffs as the minority shareholders, which included allegations that the majority shareholders engaged in conduct "to force LaChapelle from the company, freeze him out, and give his position and authority over to themselves for their own benefit, all of which resulted in the destruction of the company, as demonstrated by its current residence in bankruptcy."

The only claim that, on the face of the third-party complaint, implicates the attorney-client privilege as preventing defendants from mounting a defense is plaintiffs' derivative claim that Brill committed legal malpractice in his failure to properly advise DPC before DPC filed its complaint against plaintiffs. However, that is only one of the claims against defendants in the third-party complaint, and, thus, the trial court erred in dismissing the entire third-party complaint with prejudice.

With respect to the derivative legal malpractice claim, which does *implicate* the attorney-client privilege on its face, the trial court nonetheless prematurely dismissed that claim because the litigation was at a point before which defendants could show that any attorney-client communications existed that were material to their defense. *See Checkley v. Boyd*, 170 Or App 721, 731, 14 P3d 81 (2000), *rev den*, 332 Or 239 (2001) (dismissal of complaint under ORCP 21 A(8) on free exercise of religion grounds was premature where the most the court could conclude from the allegations in the complaint was that the statements were potentially religious in nature, but not necessarily so, as a matter of law). There is nothing on the face of the third-party complaint about what, if any, attorney-client communications exist that would be necessary to Brill's defense on the derivative malpractice claim (*i.e.*, that there was advice

given, instead of just a failure to advise, as alleged in the third-party complaint).

Moreover, because the case was proceeding against the other directors based on the same allegations—including that those directors had DPC proceed with litigation against plaintiffs without understanding DPC's obligations under the bylaws—the court could have stayed the proceedings as to defendants to determine, as the litigation progressed, whether DPC ultimately waived the privilege for any attorney-client communications shown to exist that would be necessary to defendants' defense or whether an exception under OEC 503(4) applied to those communications. *See Favila v. Katten Muchin Rosenman LLP*, 188 Cal App 4th 189, 221, 115 Cal Rptr 3d 274, 300, *rev den* (2010) ("It would be unfair to the derivative plaintiff and unnecessary to the preservation of the lawyer-client privilege to dismiss the lawsuit based on the *McDermott Will* holding only to see the attorneys' client willingly waive its privilege to permit other defendants to defend themselves in the same lawsuit or to discover after such a dismissal that the evidence developed in the lawsuit against the allegedly culpable corporate insiders establishes the applicability of the crime-fraud exception [to the lawyer-client privilege]."). Because the case did proceed against the directors, the trial court can on remand make those determinations in the first instance without a further stay of proceedings against defendants on the derivate malpractice claim. *See id.*

Accordingly, we reverse and remand on plaintiffs' appeals for further proceedings.

In A154999, affirmed. In A155359 and A155367, reversed and remanded.