Argued and submitted May 17, 2013, reversed and remanded March 26, 2014

CLACKAMAS RIVER WATER,
*Plaintiff-Respondent,*

*v.*

Patricia HOLLOWAY
and Warren Mitchell,
*Defendants-Appellants.*

Clackamas County Circuit Court
LV11040413; A149667

322 P3d 614

James D. Huffman argued the cause and filed the briefs for appellant Patricia Holloway. Michael F. Sheehan filed the briefs for appellant Warren Mitchell.

Brenda K. Baumgart argued the cause for respondent. With her on the brief were Karen L. O'Connor and Stoel Rives LLP.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

Clackamas River Water (CRW), a domestic water supply district, brought this action seeking a declaration that defendants had to return to CRW documents that defendants had obtained through a public records request, so that CRW could determine which parts of the documents, if any, should have been withheld because they were exempt from public disclosure. CRW also sought a "temporary and preliminary" injunction requiring defendants immediately to return the documents. In response, defendants invoked Oregon's Anti-SLAPP statute, under which a defendant in an action arising out of some forms of the defendant's public participation can file a "special motion to strike" a plaintiff's claim unless the plaintiff can establish, at a preliminary hearing, "a probability that the plaintiff will prevail on the claim." ORS 31.150(1), (3).[1] The trial court granted

---

[1] "SLAPP" is an acronym for "Strategic Litigation Against Public Participation." Hence, an "Anti-SLAPP" statute is one that allows defendants who claim that the litigation against them is a strategic attempt to chill their participation in public affairs to expeditiously obtain dismissal before incurring significant litigation expenses by filing, instead of an answer, a "special motion to strike" the complaint. Oregon's version, ORS 31.150, provides, in part:

"(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

"(2) A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"* * * * *

"(3) A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion."

defendants' special motions and dismissed CRW's complaint. However, the trial court also included in the judgment an order that granted CRW injunctive relief. The judgment states:

> "IT IS HEREBY ORDERED that defendants' respective Special Motions to Strike are GRANTED. It is also ordered that defendants are hereinafter prohibited from using, disclosing, or otherwise disseminating any records created, maintained, or kept in the ordinary course of plaintiff's business that are now or have been in defendants' possession at any time, if such records are or would be exempt from disclosure under Oregon's public records law, ORS 192.410 to 192.505."

Defendants appeal the judgment, characterizing the second sentence as a grant of the injunction that CRW sought and to which the court determined, in the first sentence, that CRW was not entitled. CRW, for its part, does not cross-appeal; it concedes, in other words, that its action against defendants "arises out of" defendants' statements in a proceeding authorized by law—presumably, defendants' written request for CRW to comply with the public records law—and that CRW could not establish a probability that it would prevail on its claim. Rather, CRW characterizes the judgment as "effectively dismissing [CRW's] claims, and fashion[ing] appropriate equitable relief." We agree with defendants. We therefore reverse and remand.

Because this action ended at an early stage, before either party had the opportunity to develop a factual record, and because the court made no findings, the facts are murky. As best we can discern, they are as follows. CRW, as noted above, is a domestic water supply district organized under ORS chapter 264 and subject to the public records disclosure laws in ORS chapter 192. Defendant Holloway was at all relevant times a CRW board member, and defendant Mitchell is a former board member. Between September 2007 and January 2008, Mitchell repeatedly sent public records requests to CRW's management seeking several months' e-mails sent or received through the CRW e-mail system. When his repeated requests went unfulfilled,

Mitchell, pursuant to ORS 192.450 and ORS 192.460,[2] petitioned the Clackamas County District Attorney for an order requiring CRW to disclose the requested records.

The district attorney's office contacted CRW and informed it of the request. CRW provided a letter in response, attached to which were six compact computer discs. CRW claimed that "each individual disc" contained all of the requested e-mails. CRW also explained that it had not verified the contents of the discs and that it was possible that the discs contained material that could be exempt from public records requests. Specifically, CRW seems to have been concerned that the discs might have contained private personal information about CRW employees, as well as documents subject to attorney-client privilege. The district attorney's office did not open the contents of the discs due to "software problems." Nevertheless, the district attorney issued an order explaining that e-mails are generally subject to disclosure as public records and that it was CRW's "responsibility to review [its] own records to determine whether any specific personal privacy exemptions or attorney-client privileges exist and to adequately articulate the same." Finally, the order allowed petitioner's request "for disclosure of all emails received or sent through the Clackamas River Water e-mail system for the period July 2, 2007 through January 3, 2008 * * * as to all non-exempt e-mail detailing the public's business." Presumably, "non-exempt" meant e-mail that CRW determined was not exempt from disclosure under the public records law. The district attorney, in other words, ordered CRW to determine which e-mails were exempt from disclosure, and to release the others to Mitchell.

Subsequently, in February and March of 2008, CRW's acting general manager, Lidston, provided Mitchell

---

[2] ORS 192.450 provides, in part, that

"any person denied the right to inspect or to receive a copy of any public record of a state agency may petition the Attorney General to review the public record to determine if it may be withheld from public inspection. Except as provided in subsection (5) of this section, the burden is on the agency to sustain its action."

ORS 192.460 applies when "a public body other than a state agency," such as CRW, denies a public records request, and provides that "[t]he district attorney of the county in which the public body is located * * * shall carry out the functions of the Attorney General." ORS 192.460(1).

with approximately 24 computer disks—18 more than the district attorney had seen—supposedly containing all of the requested records, without claiming that any were exempt from disclosure. The parties disagree about some of the facts underlying that event. Defendants appear to assert that CRW turned over the records in response to the district attorney's order. CRW, however, while acknowledging that its acting general manager at the time (Lidston) arranged for defendants to receive "24 or possibly more computer discs," nonetheless alleged in its complaint that "[d]efendants did not obtain the documents pursuant to the public records request process." Regardless of whose account is more accurate, it is undisputed that (1) Mitchell repeatedly requested certain e-mails, (2) CRW originally did not provide them, (3) Mitchell requested intervention from the district attorney, (4) the district attorney ordered CRW to provide nonexempt e-mails, and (5) CRW's general manager subsequently provided Mitchell with the computer discs that CRW, in this action, wants returned. Holloway apparently received the discs from Mitchell.

In February 2009, CRW, having hired a new general manager, began its attempt to secure the return of the computer discs. It intensified its efforts after a representative of CRW's employees' union protested that the employees had "concerns * * * about the possible mishandlings of employees' personal information." A series of communications between CRW and defendants followed. CRW offered to have the information in the discs reviewed by a neutral third-party who would identify information that was exempt from public disclosure, allowing defendants to retain the other information. Defendants did not accept the offer and did not return the discs.

CRW subsequently brought this action against defendants, asking for a judgment declaring that "defendants are required, in their capacities as both current or former CRW Commissioners and members of the public, to return the documents to CRW, so that CRW may determine what information the documents contain that is exempt from public disclosure." CRW also requested an order "for temporary and preliminary injunctive relief, specifically requiring that

defendants immediately return the documents to CRW, which shall remain in full force and effect until such time as the Court orders otherwise." With respect to its claim for injunctive relief, CRW argued that it had no adequate remedy at law and it would

> "be irreparably harmed by defendants' continued possession of information that is likely exempt from public disclosure along with the possibility that such information will be disclosed to additional members of the public thus exposing CRW to the possibility of legal action by employees who feel their privacy rights may have been violated."

In response, defendants filed special motions to strike under ORS 31.150, the "Anti-SLAPP statute." Defendant Mitchell argued that CRW's case was a civil action arising out of a public records request. Thus, according to Mitchell, defendants had succeeded in making a *prima facie* showing that the case arose out of a proceeding authorized by law. Mitchell then argued that CRW would be unable to meet its burden by "establish[ing] that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case," as required by ORS 31.150(3). Defendant Holloway filed a similar motion providing additional reasons why CRW could not meet its burden.

A hearing on defendants' special motions to strike occurred in July 2011. During the hearing, it became clear that CRW did not know precisely what information had been provided to defendants. The court reluctantly granted defendants' motions dismissing CRW's claim, explaining that "the motion at least on its face does appear to be an appropriate use of the anti-SLAPP statute."[3] CRW responded that dismissing the lawsuit would leave it without any way of recovering any personal employee information that may have been disclosed. The court sought to address that concern by suggesting that the court add language to the order that would "prohibit the defendants from using, disseminating,

---

[3] The court also observed,

"I've ruled on these [special motions] before and I was always—at first I was kind of taken aback that this existed, but it does.

"I didn't—I'm not the [l]egislature. I didn't create it. I don't necessarily think I agree with it totally, but I think it does. And I'm concerned, just as an aside for what it's worth, probably not anything, is that of delay[.]"

[or] publishing" such information. Both defendants objected to the court's proposed order, to no avail.[4] This appeal ensued.

The trial court's judgment and CRW's defense of it find no support in the law. For instance, CRW repeatedly states that the court did nothing more than require defendants to obey the mandates of Oregon's public records law. That is not correct for at least two reasons. First, the public records law imposes disclosure obligations, and exemptions from those obligations, on public entities; it does not impose any obligations or exemptions on private parties. Second, and more importantly, the public records law does not prohibit disclosure of exempt records; it gives public agencies and officials the *option* to withhold records from disclosure. *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 38 n 6, 791 P2d 854 (1990).[5] When CRW's employee, Lidston, released documents to defendants after the district attorney made it clear to CRW that it was *CRW's* obligation to identify and withhold any exempt information that it did not want to release, CRW manifested an intention to refrain from exercising its option to withhold. Plaintiffs cite no authority, nor have we found any, for the proposition that an agency that has released possibly exempt documents can have second thoughts and recall them for a do-over.

CRW attempts to dissociate itself from Lidston and his actions. In its complaint, CRW asserts that "defendants obtained the documents *** pursuant to an arrangement with CRW's then-Acting General Manager, Steve Lidston. Defendants did not obtain the documents pursuant to the

---

[4] The order was entered on August 30, 2011. Defendant Holloway filed a notice of appeal from that order in September. The court subsequently issued a general judgment on November 18, 2011. When that judgment was entered, however, the court lacked jurisdiction over the case because of Holloway's premature appeal. We ordered defendants to show cause why the appeal should not be dismissed. Defendants then filed a motion to give the trial court leave to reenter the judgment pursuant to ORS 19.270(4). We granted that motion. The amended judgment, which was entered on April 2, provided that plaintiff's claims were dismissed and that the "order dated August 30, 2011[, including the requirement that defendants release all non-exempt documents] remains in full force and effect."

[5] This case does not require us to decide, and we do not decide, whether provisions outside of the public records law might prohibit the disclosure or publication of public records.

public records request process." In its brief, CRW asserts that Lidston "was acting outside the scope of his authority in releasing exempt documents." Nothing in the record supports either of those assertions. There is no dispute on this record that, when Lidston released the records, he was CRW's acting general manager, that review of public records requests was among his duties, and that he released the records after the district attorney's decision. Indeed, CRW's statement of facts confirms as much:

> "The District Attorney's decision was consistent with Oregon public records laws, and specifically recognized the personal privacy and attorney-client privilege exemptions from public disclosure. The decision stated that it was CRW's responsibility to review its records to determine if any of the documents Mitchell had requested fell within these exemptions. But Lidston thereafter simply released all the requested records, and by all accounts did not engage in further (or any) review to first determine if any of the information contained within the records was exempt from disclosure."

(Citations omitted.) The fact that a subsequent general manager believed that Lidston's exercise of judgment was ill advised does not mean that Lidston's exercise of judgment was illegal or outside of the scope of his authority. Because its agent voluntarily released the documents, CRW was not entitled to their return, as it requested in its complaint, nor to compel defendants to refrain from disseminating or using them, as the court ordered.

Further, we agree with defendants that the court erred in its attempt to dismiss CRW's complaint, as required by the anti-SLAPP statute, while also deciding the case on its merits in favor of CRW. Our conclusion has nothing to do with chronological sequence. CRW may be correct in asserting that the judgment containing the grant of defendants' special motion to strike and the injunction granting CRW the relief it sought occurred simultaneously, when the judgment was entered. The dispositive fact, however, is that the motion to dismiss CRW's complaint is *logically* prior to a decision on the merits. The anti-SLAPP statute provides defendants with a mechanism by which they can minimize or avoid costly litigation. "The purpose of the procedure * * *

is to provide a defendant with the right to *not proceed to trial* in cases in which the plaintiff does not meet the burden specified in ORS 31.150(3)." ORS 31.152(4) (emphasis added). That burden is "to establish that there is a probability that the plaintiff will prevail on the claim." ORS 31.150(3). The trial court, when it granted defendants' special motion to strike, ruled that CRW did not meet its burden, and CRW does not appeal that decision. Nothing in the anti-SLAPP statute allows a court to grant a defendants' special motion to strike, but to then "proceed to trial." For that reason, the court erred in also reaching the merits of CRW's underlying complaint after granting defendants' motion to strike. Accordingly, we reverse and remand for entry of a judgment of dismissal without prejudice. ORS 31.150(1).

Reversed and remanded.