Argued and submitted June 24, 2021, reversed and remanded
February 23, 2023

STATE OF OREGON,
Department of Human Services,
*Plaintiff-Appellant,*

*v.*

Paul Leono LINDSEY
and Terez L. Lindsey,
*Defendants,*

*and*

Jennifer L. STEWART,
*Defendant-Respondent.*

Multnomah County Circuit Court
19CV31812; A172831

525 P3d 470

The Oregon Department of Human Services brought this action seeking contribution from defendant Stewart for DHS's potential liability in a separate action that sought to recover for DHS's failure to protect Stewart's child from abuse that occurred while the child was a ward of the state. Stewart filed a special motion to strike under Oregon's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. The trial court granted the motion and DHS appealed. *Held*: The Court of Appeals concluded that DHS's action against Stewart did not arise out of activities protected by the anti-SLAPP statute. Consequently, the trial court erred in granting the special motion to strike.

Reversed and remanded.

Melvin Oden-Orr, Judge.

Peenesh Shah, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Erin K. Olson argued the cause for respondent. Also on the brief was Law Office of Erin Olson, P.C.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

This case concerns a special motion to strike a lawsuit under Oregon's anti-SLAPP statute.[1] The Oregon Department of Human Services (DHS) brought this action seeking contribution from defendant Stewart for its potential liability in a separate action that sought to recover for DHS's failure to protect Stewart's child from abuse that occurred while the child was a ward of the state. DHS's action was based on allegations that Stewart bore a share of responsibility for the abuse because of her own failure to protect her child.

Stewart filed a special motion to strike, alleging that DHS's lawsuit against her arose out of activity protected by the anti-SLAPP statute. The trial court granted the motion, and DHS appeals. We conclude that DHS's suit against Stewart did not arise out of protected activity and thus is not subject to dismissal under the anti-SLAPP statute. Consequently, the trial court erred in granting the special motion to strike, and we reverse and remand.

## BACKGROUND

Due to the complex history leading to the issue at hand, we recite in some detail the background facts, as alleged in the action brought by Stewart's child, Z, against DHS and in Stewart's declaration accompanying her special motion to strike DHS's action, which are undisputed by DHS for the purposes of this appeal. Z was born in 2003 and resided with her mother, Stewart, for the first few years of her life. In 2008, Z and her siblings were removed from Stewart's care due to allegations of domestic violence. Z was placed with her maternal grandparents and remained with them until the summer of 2011.

In April 2011, the state began efforts to move Z into the care of her father,[2] who had not been her custodial caretaker previously. The following month, Z disclosed to her therapist that she had been sexually abused by her paternal

---

[1] The acronym "SLAPP" stands for "Strategic Lawsuit Against Public Participation."

[2] Due to common surnames, additional individuals will be referred to by their relationship to Z.

grandfather. Z's father was present for the disclosure and asserted that he could not believe that his father would have abused Z. Nevertheless, he promised to protect Z and to not allow further contact if Z did not feel safe. The therapist reported the abuse to DHS, but the report was closed at screening based on Z's father's promise to protect Z. DHS placed Z in her father's custody the following month, with no specific restrictions on contact with the grandfather. Stewart was told of Z's report but heard nothing further on the matter. She later asserted that she assumed the report had been determined to be unfounded, given that Z continued to spend some weekends with the grandfather.[3]

Several months after Z's disclosure, in March 2012, the juvenile court granted DHS's motion to terminate wardship based on the department's assertion that Z had been returned to a parent and the family no longer needed the assistance of DHS and the juvenile court. Shortly after that, Z's father left Z and her brother at their maternal grandparents' home. Stewart picked up the children the same day, and Z has been in Stewart's custody since then.[4] A few weeks later, the paternal grandfather contacted Stewart, asking to continue to visit the children, which he had been doing regularly since Z's father was awarded custody. Stewart agreed to some visits.

In August 2013, Z reported that her grandfather had been sexually abusing her for the past three years, which included some of the time she had been in DHS custody. Stewart immediately reported the abuse to police and sought treatment for Z. The following year, the grandfather was arrested and charged with rape and molestation; he was eventually convicted and sentenced to prison.

Over the following years, Z struggled to deal with the abuse to which she had been subjected. Eventually Stewart engaged an attorney and, in 2018, a guardian *ad litem* brought a civil action against DHS on Z's behalf, alleging negligence in allowing the abuse to occur while Z was

---

[3] Stewart and DHS were aware of the weekend visits, based on Stewart's emails with a DHS caseworker when Stewart was attempting to facilitate visitation during those weekend visits.

[4] Stewart was eventually awarded custody through divorce proceedings.

a ward of the state. DHS in turn filed an action for contribution against Stewart, Z's father, and Z's grandfather for their proportionate share of fault. As relevant here, DHS asserted that the parents knew or should have known that the grandfather was abusing Z and should have supervised all contact to prevent the abuse.[5]

Stewart filed a special motion to strike the complaint against her under ORS 31.150, Oregon's anti-SLAPP statute. She argued that DHS's action against her arose out of her reports to the police that Z was being abused and from her facilitation of the filing of Z's action against DHS, both of which she argued were protected speech or actions under the anti-SLAPP statute. She asserted that the contribution action was being used to harass and intimidate her because she caused an action to be filed against the department. DHS responded that the action against Stewart arose out of her failure to protect her daughter, which is not activity that is subject to the anti-SLAPP statute. The agency further asserted that the action could not be used to intimidate Stewart in any way, as Z's action against DHS had already been filed and was being handled by the guardian *ad litem*.

The trial court found that Z's action against DHS would not exist "but for" Stewart's efforts on her daughter's behalf. The court further noted that Z's action against DHS involved an issue of public interest, namely "DHS's problems protecting children." The court thus concluded that Stewart had met her burden of establishing that the action arose out of protected activity that was subject to ORS 31.150 and granted Stewart's special motion to strike.[6] DHS now appeals that ruling.

## ANALYSIS

We begin with a brief overview of the "anti-SLAPP" statute, which was enacted to address a concern that an action that can be termed a SLAPP (or Strategic Lawsuit Against Public Participation) aims not "to bring a legitimate

---

[5] Z's father and grandfather are not parties to the current appeal.

[6] The trial court made additional findings regarding DHS's failure to meet its burden of establishing that there was a probability that it would prevail on its claim against Stewart. However, because we conclude that the trial court erred in finding ORS 31.150 applied to the action, we do not address those findings.

claim" but, rather, "to chill a person's 'participation in public affairs.'" *Handy v. Lane County*, 274 Or App 644, 650, 362 P3d 867 (2015), *aff'd in part, rev'd in part on other grounds*, 360 Or 605, 385 P3d 1016 (2016) (quoting *Clackamas River Water v. Holloway*, 261 Or App 852, 854 n 1, 322 P3d 614 (2014)). The anti-SLAPP provision permits "a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage" before the defendant is subject to substantial expenses in defending against the case. *Mullen v. Meredith Corp.*, 271 Or App 698, 700, 353 P3d 598 (2015).

ORS 31.150 reads:

"(1)  A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

"(2)  A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a)  Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b)  Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c)  Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d)  Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(3)  A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion."

In *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013), we explained the two-step process set out in ORS 31.150:

"Thus, the resolution of a special motion to strike under Oregon's anti-SLAPP statute requires that the court engage in a two-step burden-shifting process. First, the court must determine whether the defendant has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in subsection (2). Second, if the defendant meets its burden, 'the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.' If the plaintiff succeeds in meeting that burden, the special motion to strike must be denied."

We begin with step one and address whether Stewart, as the defendant, met her burden of making a *prima facie* showing that the claim against her "arises out of" conduct described in ORS 31.150(2). We review the trial court's ruling for legal error. *Deep Photonics Corp. v. LaChapelle*, 282 Or App 533, 540, 385 P3d 1126 (2016), *rev den*, 361 Or 524 (2017). As noted above, the trial court found that Stewart met her burden at step one, determining that the action against her arose out of protected petitioning activities described in ORS 31.150(2). The trial court then found that DHS had not met its burden to establish that there was a probability that it would prevail on its claim against Stewart and therefore granted Stewart's special motion to strike.

This appeal turns on whether DHS's action "arises out of" Stewart's reports to the police and facilitation of the

filing of Z's action, as Stewart argues and the trial court found, or Stewart's alleged failure to protect Z from abuse.

To determine whether a claim arises out of conduct described in ORS 31.150(2), we examine the conduct that is targeted by the claims in the complaint. *Tokarski v. Wildfang*, 313 Or App 19, 24-25, 496 P3d 22, *rev den*, 368 Or 788 (2021). In *Deep Photonics*, as here, the parties disputed the conduct out of which plaintiff's claim arose. 282 Or App at 545. There, a closely held corporation had initially sued certain shareholders for mismanagement of assets and intellectual property. *Id.* at 538. The shareholders subsequently filed a third-party complaint against the corporation's legal counsel (among others), alleging breach of fiduciary duty and negligence in managing the company. *Id.* at 538-40. The attorney, Brill, as third-party defendant, filed a special motion to strike under the anti-SLAPP statute, arguing that the claims against him arose out of his provision of legal advice in anticipation of litigation, which he asserted were statements that would qualify for protection under ORS 31.150(2)(b). *Id.* at 542-44. We held that the actions from which the claim arose were not Brill's statements in anticipation of litigation, but rather, as alleged in the third-party complaint, Brill's actions in assisting in the corporation's wrongful actions against the shareholders and committing legal malpractice. *Id.* at 545-56. We noted:

> "To 'arise out of' the conduct described in [ORS 31.150(2)(b)], the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it. *See Kolar* [*v. Donahue, McIntosh & Hammerton*], 145 Cal App 4th [1532,] 1537, 52 Cal Rptr 3d [712,] 716 [(2006)] ("A cause of action may be 'triggered by' or associated with a protected act, but it does not mean the cause or action *arises* from that act."). Plaintiffs' claims do not 'arise out of' statements that Brill made to DPC in anticipation of litigation (or, indeed, his 'approval' of the lawsuit). Rather, plaintiffs' claims 'arise out of' Brill's *failure* to give competent legal advice to DPC, which is not an act in furtherance of the right to petition. In other words, plaintiffs' claim is not based on Brill's act of advising DPC to bring a lawsuit; it is based on Brill not competently representing DPC's interests when he did so. That plaintiffs'

> claim was pled as a derivative legal malpractice claim does not change the nature of the acts from which the alleged liability arises—it remains that the nature of those acts are 'garden variety' legal malpractice and not petitioning activity."

*Id.* at 546-47 (emphasis in original).

In the present matter, in answering the factual question of what actions the claim arises out of, we view the evidence in the light most favorable to plaintiff, DHS, based on the affidavits submitted and the complaint. *See id.* at 545. At its core, DHS's claim against Stewart is based on her alleged role in allowing the abuse of Z to occur. In its complaint, DHS alleged that Stewart knew or should have known that Z was being abused, that the grandfather would abuse Z if given the opportunity to do so, that Z should not have had unsupervised contact with her grandfather, and that Stewart was therefore negligent or reckless in failing to ensure that abuse did not happen, in failing to supervise all contact between Z and her grandfather, and in failing to protect Z from physical, emotional, and mental harm. DHS's claim arises from the actions that resulted in Z being abused and the various parties' comparative fault in allowing that abuse to occur, not the reporting of the abuse or the initiation of the action against DHS on behalf of Z.

While the trial court was correct that "but for" Stewart's actions facilitating the filing of Z's action against DHS, the present claim for contribution would not exist, that is not the standard for determining the actions out of which a claim arises within the meaning of ORS 31.150(2). The inquiry turns on the nature of the claims asserted against a defendant and the alleged actions of the defendant giving rise to those claims, not on whether the claims would not have happened "but for" other petitioning conduct of the defendant. Just as the attorney defendant's alleged actions that underlay the claims in *Deep Photonics*—failure to give competent legal advice—were not in furtherance of a right to petition, *id.* at 546-47, Stewart's alleged actions in failing to protect Z from abuse were not in furtherance of a right to assert a legal remedy against DHS for failing to protect Z from abuse.

Stewart's alleged negligence or recklessness in supervising Z and those with whom Z came into contact are not actions that are protected under ORS 31.150(2). Stewart therefore did not meet her burden of demonstrating that DHS's claim against her arose out of any activity that is subject to the anti-SLAPP statute. We therefore conclude that the trial court erred in granting Stewart's special motion to strike. We also, accordingly, vacate the trial court's award of attorney fees to Stewart, which was based on Stewart having prevailed on her motion.

Reversed and remanded.