No. 340 April 29, 2026 93

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Nour Eddine MOUKTABIS,
*Plaintiff-Appellant,*

*v.*

Sandra M. FABER
and Faber Family Law, LLC,
*Defendants-Respondents,*

*and*

M. A.
et al.,
*Defendants.*

Washington County Circuit Court
22CV02898; A180428

Theodore E. Sims, Judge.

Argued and submitted February 26, 2025.

Nour Eddine Mouktabis argued the cause and filed the brief *pro se.*

James F. Fryer argued the cause for respondents. Also on the brief was Hannah I. McCausland and Brisbee & Stockton LLC.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

A trial court found plaintiff Nour Mouktabis to be a vexatious litigant after he repeatedly sued the lawyers who had represented his ex-wife in a dissolution proceeding. As a result, the court imposed a restriction on Mouktabis[1] in the form of an injunction: that before any future lawsuit he filed against his ex-wife's lawyers could proceed, he was required to submit the proposed complaint and evidence to the presiding judge of a county that had venue to determine whether the claim was frivolous. Mouktabis appeals the judgment that imposed the injunction, which also dismissed Mouktabis's latest lawsuit against one of his ex-wife's lawyers. Mouktabis raises two assignments of error. In his first assignment of error, he asserts that the trial court erred by imposing the injunction on him. In his second assignment of error, Mouktabis asserts that the trial court erred by granting a special motion to strike (colloquially called an "anti-SLAPP" motion) and dismissing the lawsuit. We conclude that the trial court acted within its discretion to designate Mouktabis as a vexatious litigant. We also conclude that the trial court did not err by granting the special motion to strike because the claims—including one regarding a notice of *lis pendens*—arose from matters submitted to a judicial body or in connection with an issue under consideration by a judicial body. We thus affirm.

## I.   BACKGROUND

Mouktabis filed for divorce from his then wife M in 2018. A general judgment of dissolution of marriage was entered on May 11, 2021. The divorce generated substantial litigation, driven mostly by Mouktabis. Mouktabis has litigated many actions at trial and on appeal and has at times been successful. Mouktabis has been the proponent of seven appeals in this court alone, all related to or stemming from the divorce proceeding.[2]

---

[1] Because we address many legal actions, in which Mouktabis has variously been a plaintiff, a civil defendant, and a criminal defendant (among other roles), we refer to him by his last name to avoid confusion.

[2] *Mouktabis v. M. A.*, 341 Or App 806 (2025) (memorandum disposition) (affirming dismissal of lawsuit against M regarding statements made in the FAPA proceeding); *Mouktabis v. M. A.*, 324 Or App 305, 524 P3d 141 (affirmed without opinion), *rev den* 371 Or 127 (2023); *Mouktabis v. Oregon City Police Dept*, 337 Or

In that divorce proceeding, M was represented by Sandra Faber, Dan Duyck, Kara Duyck, and Andrew Newsom. Mouktabis was originally represented by counsel, but eventually proceeded *pro se* and has been *pro se* since. M successfully brought a separate FAPA proceeding against Mouktabis which ran concurrently to the divorce case. In both the divorce and the FAPA proceedings, Mouktabis filed ORCP 17 motions for sanctions against M's attorneys. He alleged that the attorneys had made knowingly false statements in the course of representing M. The ORCP 17 motion in the FAPA case was denied because the case was on appeal. The ORCP 17 motion in the divorce case was denied by general judgment in the trial court.

In 2019, Mouktabis was accused of violating a restraining order by contacting M, which resulted in his arrest by the Clackamas County Sherriff's office on a charge of contempt of court. Mouktabis was later acquitted.

In November 2020, during the pendency of the divorce case, Mouktabis tried to sell a marital asset: a condo. The trial court found that Mouktabis's actions were unreasonable in regard to the attempted sale, and that the condo was protected by the financial restraining order issued earlier in the divorce case. After Mouktabis put the condo on the market, Faber filed a notice of *lis pendens* to prevent its sale.

In January 2021, prior to the conclusion of the divorce case, Mouktabis sued M and all four of her attorneys (and their respective law firms). The thrust of his complaint was that his ex-wife was lying about him in pleadings and in court for personal gain or vengeance, and that her attorneys knew of her scheme and were complicit in it. Defendants brought an anti-SLAPP motion to strike under ORS 31.150

App 226, 563 P3d 1003 (2025) (reversed and remanded; Mouktabis sued after being arrested for allegedly violating a restraining order and subsequently being acquitted of doing so); *Mouktabis v. Clackamas County*, 327 Or App 763, 536 P3d 1037 (2023), *rev den* 372 Or 290 (motion to dismiss denied; motion for sanctions denied; motions for ORS 19.360 review denied; supplemental money judgments vacated and remanded; otherwise affirmed. That case also involved suing Faber.); *Mouktabis v. M. A.*, 315 Or App 22, 500 P3d 32 (2021) (reversed and remanded; described as "acrimonious litigation"); *Mouktabis v. M. A.*, 314 Or App 130, 499 P3d 881, *rev den*, 324 Or App 305 (2021) (in which Mouktabis attempted to act as his daughter's guardian *ad litem* and sue his ex-wife; Mouktabis was required to procure counsel); *M. A. v. Mouktabis*, 311 Or App 750, 487 P3d 449 (2021) (per curiam) (reversed and remanded to allow Mouktabis a rehearing on a FAPA order).

and a motion to dismiss under ORCP 21, which the trial court granted. Mouktabis was ordered to pay $48,668.63 in attorney fees and costs.

In June 2021, two months after the dismissal of the prior case, Mouktabis sued Clackamas County, M, and M's attorney Faber (and her firm). Mouktabis alleged false arrest, false imprisonment, malicious prosecution, and abuse of process, stemming from his arrest and acquittal in the 2019 contempt prosecution. Faber again brought an anti-SLAPP motion, which the trial court granted, awarding Faber $12,119.50 for attorney fees and costs and a $5,000.00 enhanced prevailing party award. *See Mouktabis v. Clackamas County*, 327 Or App 763, 536 P3d 1037 (2023), *rev den* 372 Or 290 (2024) (affirming the dismissal on anti-SLAPP grounds but remanding to reconsider the fees).

In the instant lawsuit of January 2022, Mouktabis again sued all four of M's attorneys (and their firms). However, he effectuated service only on Faber. Mouktabis concedes that this lawsuit is materially identical to the prior lawsuit against the attorneys, albeit filed in a different county and with some claims removed. Faber responded by filing both an anti-SLAPP motion and a "Motion to Declare Plaintiff a Vexatious Litigant." The court granted both motions and outlined a set of conditions that Mouktabis was required to meet before filing future lawsuits against M's attorneys.[3]

---

[3] The text of the order reads:

"1. As used herein, the term 'Protected Parties' includes all attorneys and firms that have represented or are representing [M] and the attorneys and firms that have represented [M]'s attorneys;

"2. Plaintiff Nour Mouktabis is prohibited from filing a Complaint against any of the Protected Parties unless:

"a. Nour Mouktabis submits a written application for leave to file the Complaint to the Presiding Judge of the Court in which he is filing the Complaint, supported by a copy of the proposed Complaint and a Declaration signed by Nour Mouktabis;

"b. Nour Mouktabis must obtain written leave of the Court to file the Complaint;

"3. The Court shall deny any application by Nour Mouktabis for leave to file a Complaint against any of the Protected Parties unless the Court finds that he, through his Declaration, has made a prima facie showing:

"a. that the claims alleged in the Complaint are not frivolous;

"b. that the claims alleged in the Complaint are supported by evidence;

## II.  ANALYSIS

### A.  *Power to Impose a Vexatious Litigant Injunction*

In his first assignment of error, Mouktabis asserts that the trial court erred when it granted Faber's motion to designate him as a vexatious litigant. At the time that Mouktabis was declared a vexatious litigant, ORCP 35 (regarding "abusive litigants") had not yet gone into effect. Because ORCP 35 did not exist at the time, we must determine whether the existing law gave courts the authority to address such litigants.

Although we ultimately review the granting of the motion for abuse of discretion, we must first answer a question of legal error: whether Oregon law authorized the designation of a vexatious litigant prior to ORCP 35. The parties did not provide, nor could we find, any prior Oregon case law that has answered that question. We recently addressed the *scope* of vexatious litigant designations in *Neal v. Neal,* 347 Or App 442, 447, ___ P3d ___ (2026), but did not decide whether the designation itself was allowable as the issue was unpreserved. Here, Mouktabis has preserved his challenge to the underlying validity of such injunctions. Mouktabis argues that no provision in Oregon law provides the power to designate vexatious litigants. Faber argues that the power derives from ORS 1.010.

ORS 1.010 provides that:

"Every court of justice has power:

"* * * * *

"(5)   To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any

---

"c. that the claims in the Complaint are not made in bad faith or presented for any improper purpose, such as to harass the Protected Parties or to cause the Protected Parties to incur the costs of litigation; and

"d. that the claims in the Complaint are not based on the actions taken or statements made by any of the Protected Parties in this case or any other litigation filed by Nour Mouktabis;

"4. If Nour Mouktabis files a Complaint against one or more of the Protected Parties without first obtaining written leave of the Court, in violation of this order, then the Court shall, on its own motion or upon motion of any of the Protected Parties, enter a judgment dismissing the Complaint against the Protected Parties with prejudice."

manner connected with a judicial proceeding before it, in every matter appertaining thereto."

ORS 1.010(5) means that "where that court has jurisdiction *** its authority to act is clear." *See State ex rel. Hall v. Riggs*, 319 Or 282, 294, 877 P2d 56 (1994). We first address the interpretation of ORS 1.010(5), before looking to federal case law for general principles of pre-filing orders. We then address Mouktabis's challenge to whether the trial court had jurisdiction under ORS 1.010, and then whether the injunction was unconstitutional.

Mouktabis argues that we should read "before it" in ORS 1.010 to mean that a court may not limit a connected person in a matter that is not the instant matter, and that the injunction against him applied to matters not before the court. We agree that in the strictest sense, a future proceeding is not the proceeding at hand. But we disagree that a court may not limit conduct in proceedings other than the instant proceeding. That a court "has jurisdiction to enjoin pending or threatened proceedings in another court to prevent oppressive and vexatious litigation, and especially when such litigation is not brought in good faith, but is instituted for an illegal and wrongful purpose, is undisputed." *Alderman v. Tillamook County*, 50 Or 48, 52, 91 P 298 (1907) (after evidence of *ex parte* conspiracy between county and court, county barred from attempting to remove administrator of estate until it succeeded in other litigation to prove that it was a creditor of the estate).

Given that no prior Oregon case has determined the underlying validity of such orders, and having already examined Oregon law, we turn to a related federal practice for guidance: pre-filing restrictions. Such federal pre-filing restrictions are injunctions which are grounded in the common law principles of *res judicata* and collateral estoppel which Oregon also recognizes. *See Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F2d 1515, 1523 (9th Cir 1983) *cert den* 465 US 1081 (1984) (granting injunction against relitigating an action against 253 defendants in over 30 districts that had twice before been dismissed); *D'Amico ex rel. Tracey v. Ellinwood*, 209 Or App 713, 717, 149 P3d 277, 280 (2006), *rev den,* 342 Or 473 (2007) ("Oregon has long subscribed to

the related common-law doctrines of issue preclusion (collateral estoppel) and claim preclusion (*res judicata* ).”). *Wood* first concluded that a district court had the power to grant such an injunction, and then that the district court did not abuse its discretion by doing so. *Id*. *Wood* provides a crucial admonition against overuse of such injunctions:

> “If used too freely or couched in overly broad terms, injunctions against future litigation may block free access to the courts. Such access not only insures protection of privately created commercial interests, it also serves as the final safeguard for vitally important constitutional rights. We are particularly reluctant to impede access to the courts for a *pro se* litigant such as Wood. As a class, those without the resources to hire counsel may, more heavily than most, have to depend on the judiciary to guard their interests.”

*Id*. at 1525; *see also Moy v. U.S.*, 906 F2d 467, 470 (9th Cir 1990) (“The plaintiff’s claims must not only be numerous, but also be patently without merit.”)

The two approaches differ in one respect: which court makes the determination. The federal approach requires that the court that originally litigated the issue gatekeep its relitigation. The approach here requires that the presiding judge of the court with venue gatekeep actions against the enumerated defendants. This approach is an innovation on the more staid federal approach, but we see no reason why it cannot be used to deter vexatious litigants—especially given the broad grant of power to courts under ORS 1.010.

Therefore, we conclude, based on a plain reading of ORS 1.010(5), federal law, and our own case law, that ORS 1.010(5) grants trial courts the power to designate vexatious litigants, subject to certain limitations that we enumerate in the discretionary section.

As related to him in particular, Mouktabis first argues that the court lacked subject matter jurisdiction to impose an injunction on him because the issue of injunctive relief was not pleaded. Mouktabis argues that in order to bring about such relief, Faber needed to have filed her own lawsuit or at least filed an answer and counterclaim. We reject that contention. The process sought here is more analogous to seeking ORCP 17 sanctions for misconduct in

process (which do not require the filing of a counterclaim), rather than seeking traditional injunctive relief for an underlying wrong. Further, *Alderman* supports the existence of jurisdiction. *See Alderman*, 50 Or at 52 (courts may have jurisdiction beyond the instant lawsuit). The trial court had subject matter jurisdiction.

Second, Mouktabis argues that the court lacked personal jurisdiction over parties other than him, M, Faber, and Faber's law firm, and thus could not craft a remedy that covered M's other lawyers (such as the Duycks and Newsom). But the injunction was not binding on those defendants—it was binding on Mouktabis. Mouktabis consented to personal jurisdiction by filing the lawsuit, and he does not challenge the court's jurisdiction over him. *See Phillips Petroleum Co. v. Shutts*, 472 US 797, 812, 105 S Ct 2965, 86 L Ed 2d 628 (1985) ("Any plaintiff may consent to jurisdiction.").

Mouktabis also argues that the motion denied him his constitutional right of access to the courts. "The Fourteenth Amendment requires 'meaningful' access to the courts." *McGee v. Baldwin*, 183 Or App 1, 5, 51 P3d 614 (2002). But "there is no constitutional right to file frivolous litigation." *Wolfe v. George*, 486 F3d 1120, 1125 (9th Cir 2007) (upholding California vexatious litigant law). "[T]he kind of injury required to establish deprivation of the right of access to the courts must be fatal to a claim," such as by "dismissal of [a] complaint or inability to file a complaint." *McGee*, 183 Or App at 6. Here, the requirement to receive leave of court is not inherently fatal to a claim. To the extent that a court might deny Mouktabis leave within the scope of the designation, *i.e.* because he filed for an improper purpose, that would not unconstitutionally deny him access to the courts. A litigant is not denied access to the courts when their lawsuit is dismissed for having been filed for an improper purpose. *See Lewis v. Casey*, 518 US 343, 353 n 3, 116 S Ct 2174, 135 L Ed 2d 606 (1996) ("Depriving someone of a frivolous claim * * * deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). As written and applied to this case, the injunction does not inherently deny Mouktabis the constitutional right of access to the courts.

B.  *Discretion and Narrowness of the Injunction*

Having established that the trial court had the power to designate Mouktabis as a vexatious litigant, we now turn to whether that exercise was within its discretion—*i.e.*, justifiable by the procedural and factual history, and narrowly tailored to address the issue at hand. *See De Long v. Hennessey*, 912 F2d 1144, 1148 (9th Cir 1990) *cert den* 498 US 1001 (first determining whether there were "substantive findings as to the frivolous or harassing nature of the litigant's actions" and then whether the resulting order was appropriately narrow). We agree with the parties that the appropriate standard of review is abuse of discretion. Support for this is found both in ORS 1.010(5). We may also look to extra-jurisdictional case law to the extent it is persuasive. *See Moy*, 906 F2d at 469 (applying abuse of discretion to review of pre-filing orders).

Federal case law and constitutional principles suggest that pre-filing orders ought be both justified and appropriately narrow. *De Long*, 912 F2d at 1148 ("[T]hese orders must be narrowly tailored to closely fit the specific vice encountered."); *see Lewis*, 518 US at 353 n 3 (implying that denying non-frivolous claims may run afoul of the federal constitution). Narrowness is important because—as Mouktabis's own litigation history indicates—even difficult litigants may bring meritorious cases. Still, a court is within its discretion to eventually place tailored guardrails on litigants who push against all boundaries of legal restraint, if such a limitation is supported by the record. *See De Long*, 912 F2d at 1148 (overturning vexatious litigant order where record failed to show abusive behavior).

Here, the guardrails were imposed only after Mouktabis had repeatedly relitigated the same issue and brought numerous proceedings against the same defendants. Mouktabis himself conceded that this lawsuit was an identical copy of a prior dismissed lawsuit. Mouktabis argues that the dismissals were without prejudice, which surely a trial court could weigh in deciding whether to grant such an injunction. But the trial court was also free to consider that Mouktabis had three times sued Faber as a result of her representation of M, with each prior suit being

dismissed as the result of an anti-SLAPP motion to strike. The trial court could also have considered the bitter nature of the divorce and Mouktabis's other litigation, and concluded that Mouktabis was not bringing an identical lawsuit in good faith. The trial court was not required to designate Mouktabis as a vexatious litigant, but it was within its discretion to do so based on the evidence in the record.

The order was also narrowly tailored to the issue at hand. To determine if the scope is appropriately narrow, we examine the four categories of lawsuit that the injunction demands be dismissed: (1) frivolous claims, (2) claims unsupported by evidence, (3) claims made in bad faith or for an improper purpose, and (4) claims arising out of actions or statements made in litigation. *See De Long*, 912 F2d at 1148 (examining text of order to determine whether it was appropriately narrow).

The first three restrictions are plainly appropriate for an injunction. While those three categories are broad, they are categories of improper lawsuit that are already disallowed by general principles, such as that the courts are for justice, not harassment. *See Lewis*, 518 US at 353 n 3. Indeed, Mouktabis was not stopped by being required to pay the considerable sum of $48,668.63 as a result of his first dismissed lawsuit against the lawyers, or by the award of fees and an enhanced prevailing party fee in the second dismissed lawsuit. Given that the trial court concluded that Mouktabis had "gone past the 'enough is enough' standard," it was appropriate for the trial court to pointedly restrict the filing of such lawsuits.

Unlike the first three restrictions, the fourth restriction is not based on general legal principles, but rather arises out of ORS 31.150(2)(a)(A) in the anti-SLAPP statutes. ORS 31.150(2)(a)(A) provides for the dismissal of claims arising from "[a]ny oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law[.]" ORS 31.150(2)(a) reflects the underlying common law that statements made in litigation are absolutely privileged, unless the action was decided adversely to that party and the action was brought without probable cause and for an

improper purpose. *See Mantia v. Hanson*, 190 Or App 412, 418-419, 79 P3d 404 (2003) (laying out the common law of absolute privilege).

The fourth restriction in the vexatious litigant order similarly prohibits Mouktabis from filing any claim arising from "the actions taken or statements made by any of the Protected Parties in this case or any other litigation filed by Nour Mouktabis[.]" Given that Mouktabis had three lawsuits dismissed via anti-SLAPP motions that implicated ORS 31.150(2)(a)(A), it was appropriate and not overbroad for the trial court to impose the last restriction.

The sanction—dismissal of any non-conforming lawsuit—was also mild compared to the charge of contempt of court allowed by ORCP 35 D(6). Nor did the order require posting a security, like in California or as allowed by ORCP 35. Cal. Civ. Proc. Code § 391.1 (upheld by *Wolfe v. George*, 486 F3d 1120, 1125 (9th Cir 2007)); ORCP 35 D(3). Nor did the court prevent Mouktabis from suing the lawyers for other wrongs, such as if the parties had been in a car accident. The injunction was justified by the record and appropriately tailored to the vexatious conduct at issue. The trial court did not err by designating Mouktabis as a vexatious litigant.

C.   *Special Motion to Strike*

In his second assignment of error, Mouktabis asserts that the trial court erred by granting defendant's special motion to strike. Mouktabis concedes that the trial court was correct in also granting defendants' ORCP 21 motion to dismiss; thus, the case should have been dismissed either way. But whether the special motion to strike should have been granted is not moot because dismissals under ORS 31.150 mandate an award of attorney fees.

We review a ruling on a special motion to strike for legal error. *Plotkin v. SAIF*, 280 Or App 812, 815, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017). "In conducting that review, we take the facts from the pleadings and from the supporting and opposing declarations and affidavits submitted to the trial court, ORS 31.150(4), and we view the facts underlying [the] plaintiff's claim in the light most favorable to [the] plaintiff." *Id*. "To determine whether a claim arises

out of conduct described in ORS 31.150(2), we examine the conduct that is targeted by the claims in the complaint." *Dept. of Human Services v. Lindsey*, 324 Or App 312, 318, 525 P3d 470 (2023). "The inquiry turns on the nature of the claims asserted against a defendant and the alleged actions of the defendant giving rise to those claims[.]" *Id*. at 319.

As relevant here, ORS 31.150(2)(a)(A)-(B) protects "any oral statement made, or written statement or other document submitted" either in a "judicial proceeding" or "in connection with an issue under consideration or review by a * * * judicial body." Here, most of the conduct underlying Mouktabis's suit clearly arises out of conduct protected under ORS 31.150(2)(a)(A)-(B), because it concerns statements made in open court or submitted as part of judicial proceedings: the divorce case, the FAPA case, and subsequent proceedings.

The litigation does however raise a novel issue regarding Mouktabis's allegation that Faber's notice of *lis pendens* against the family condo was improper. Mouktabis argues that a notice of *lis pendens* is not protected by ORS 31.150. A notice of *lis pendens* is a claim of encumbrance filed with the county where real property sits, which notifies "people who obtain an interest in the property after commencement of the suit that they will be bound by the outcome of the suit." *See Indian Ridge I, LLC v. Lenahan*, 314 Or App 715, 720, 497 P3d 806 (2021) (discussing the nature of *lis pendens* at length). Mouktabis points to *Baldwin v. Seida*, 297 Or App 67, 76, 441 P3d 720, *rev den* 365 Or 769 (2019), where we concluded that a writ of garnishment was not protected by ORS 31.150 because it was not a statement "submitted in a judicial proceeding" or "submitted in connection with an issue under consideration or review by a judicial body."

We agree that the notice of *lis pendens* was not submitted in a judicial proceeding under ORS 31.150(2)(a)(A), as it was submitted to the county where the condo was situated, and not in the trial court. However, we conclude that it was submitted in connection with an issue under consideration by a judicial body under ORS 31.150(2)(a)(B). *Baldwin* is distinguishable because the litigation there had ended as to the

parties against whom garnishment was sought, and a limited judgment had been entered. *Baldwin*, 297 Or App at 76. Thus, there could not be any issue under consideration by a judicial body. A similar conclusion is compelled by *Craft Renovations Inc. v. Harris*, 340 Or App 33, 43, 570 P3d 629 (2025), wherein we found that a construction lien was not covered by the anti-SLAPP statutes because there was no litigation whatsoever pending in any court. But here, the condo was part of the property being actively considered in connection with the divorce, and the trial court there had found the condo to be covered under the terms of the financial restraining order. There was litigation, and it had not ended.

Still, because we have not directly addressed the issue of *lis pendens* notices, we turn to California case law for a direct persuasive example. *See Davoodian v. Rivera*, 327 Or App 197, 210, 535 P3d 309 (2023) (because Oregon's anti-SLAPP statutes—adopted in 2001—are based on California's, we may turn to relevant post-2001 California law for, at most, its persuasive authority). In *La Jolla Group II v. Bruce*, 211 Cal App 4th 461, 471, 149 Cal Rptr 3d 716 (2012), the California Court of Appeals determined that the litigation privilege (upon which ORS 31.150(2)(a)(A) ultimately rests) generally applies to *lis pendens* notices and that California's anti-SLAPP law covered the notice of *lis pendens* at issue. While California's approach has some statutory requirements that Oregon does not,[4] we find *Bruce* to be persuasive as to its holding that a *lis pendens* notice is subject to the litigation privilege and is generally covered by anti-SLAPP statutes. Combined with our understanding of *Baldwin* and the plain text of ORS 31.150(2)(a)(A), the notice of *lis pendens* was submitted in connection with an issue under consideration by a judicial body. In turn, the trial court did not err by granting the special motion to strike.

## III.   CONCLUSION

The trial court had the power under ORS 1.010(5) to designate Mouktabis as a vexatious litigant. In turn, the trial court did not abuse its discretion by so designating him

---

[4] Namely: "(1) the *lis pendens* must identify a previously filed action and (2) the previously filed action must be one that affects title or right of possession of real property." *Bruce*, 211 Cal App 4th at 476.

given his litigation history. Additionally, the trial court's injunction was appropriately narrow and tailored to the issues raised. As to the special motion to strike, all claims, including claims arising from the notice of *lis pendens*, were covered by the anti-SLAPP statute, ORS 31.150. The trial court did not err by granting either motion.

Affirmed.