Argued and submitted June 6, affirmed August 24, 2016, petition for review
denied January 13, 2017 (360 Or 752)

CLACKAMAS COUNTY OREGON, MAY 21,
*Plaintiff,*
*and*

Warren MITCHELL,
an individual,
*Contestor-Appellant,*

*v.*

CLACKAMAS RIVER WATER,
a municipal corporation; and
Clackamas County,
a political subdivision of the State of Oregon,
*Intervenors-Respondents,*

*and*

Kenneth HUMBERTSON,
an individual;
Hugh H. Kalani, an individual; and
Larry Sowa, an individual,
*Contestees-Respondents.*

Clackamas County Circuit Court
CV13060731; A157776

382 P3d 598

Robert D. Herndon, Judge.

James D. Huffman argued the cause and filed the briefs for appellant.

C. Robert Steringer argued the cause for respondent Clackamas River Water. With him on the briefs were Brett Applegate and Harrang Long Gary Rudnick P.C.

Stephen Madkour for respondent Clackamas County joined the brief of respondent Clackamas River Water.

No appearance for respondents Kenneth Humbertson, Hugh H. Kalani, and Larry Sowa.

Before Ortega, Presiding Judge, and Armstrong, Judge, and Lagesen, Judge.

## LAGESEN, J.

Contestor Mitchell alleges that contestees Sowa, Humbertson, and Kalani knew of illegal votes cast in their election to the board of commissioners of Clackamas River Water (CRW), a domestic water supply district. As authorized by ORS 258.026 and ORS 258.036, contestor filed a petition of contest of election, seeking to set aside their election. With leave of the trial court, CRW intervened to defend the validity of the election; none of the contestees actively participated in the proceeding. The trial court rejected contestor's challenge, finding that contestor did not meet his burden of proving, by clear and convincing evidence, that contestees knew of the illegal votes.[1] By a general judgment, the trial court dismissed the petition with prejudice.

CRW then petitioned under ORS 258.046(1) for $54,000 in attorney fees. The trial court awarded the requested fees, finding, among other things, that contestor's

"complaint makes claims which were reckless, willful and in bad faith. Specifically, the petition asserted the contestees had knowledge of thousands of illegal votes being cast in district elections. In fact, [contestor] offered no evidence to support such a claim. [Contestor] had little actual knowledge of the evidence in the case and [contestor's] primary witness at trial was Patricia Holloway who authored the petition, paid the filing fee and arranged for publication of the required notice.

"* * * * *

"[Contestor's] claim the 'contestees' had knowledge of or connived in the casting of illegal votes was without basis and the claims were objectively unreasonable. Even if this was not clear to [contestor] before commencement of the litigation, it is simply not possible to conclude [contestor] and his counsel did not reach the conclusion they could not satisfy their burden of proof with regard to knowledge during the course of the litigation.

---

[1] To set aside an election based on illegal votes, a contestor must prove either that "[t]he person nominated or elected had knowledge of or connived in" the illegal votes, or that "[t]he number of votes taken from the person nominated or elected" by virtue of the illegal votes would "reduce the legal votes of the person below the number of legal votes given to another person for the same nomination or office." ORS 258.026(1). Contestor's theory in this case was that the contestees knew about the illegal votes.

"Furthermore, during the course of the litigation [contestor] and his alter ego Patricia Holloway conducted themselves in a way which increased the time and expense of all parties associated with this controversy."

The court entered a supplemental judgment on the fee award. Contestor has appealed that supplemental judgment. For the reasons that follow, we affirm that judgment.

On appeal, contestor first makes a number of arguments as to why the trial court erred by permitting CRW to intervene. But contestor did not appeal the general judgment dismissing the petition; contestor appealed only the supplemental judgment awarding fees. That means, by statute, our jurisdiction is limited to consideration of only those matters decided by the supplemental judgment. ORS 19.270(7) ("If a * * * supplemental judgment is appealed, the jurisdiction of the appellate court is limited to the matters decided by the * * * supplemental judgment[.]"); *White v. Vogt*, 258 Or App 130, 140, 308 P3d 356 (2013). CRW's motion to intervene is not among those matters, and, as a result, the correctness of the trial court's decision to grant that motion is not properly before us.

Contestor next argues that CRW is not a "prevailing part[y] under ORCP 68 or ORS 20.[077]"[2] because it did not "prevail[] on any claims." However, ORS 258.046(1)—not ORCP 68 or ORS 20.077[3]—mandates the trial court to award fees to CRW. That provision clearly states: "The prevailing party in the contest proceeding shall recover costs, disbursements and reasonable attorney fees[.]" ORS 258.046(1). Even if contestor were correct that an election contest proceeding does not involve a "claim" within the meaning of ORS 20.077 (although we are skeptical that contestor's request to invalidate the election cannot

---

[2] In his brief, contestor refers to ORS 20.070. That statute was repealed in 1981. Or Laws 1981, ch 898, § 53. We assume, from the nature of his argument, that contestor meant to refer to ORS 20.077.

[3] That does not mean that those provisions are irrelevant to the trial court's fee decision. Where, as here, a statute or other source of law entitles a party to an award of fees, ORCP 68 supplies the procedure for awarding them, *Montara Owners Assn. v. La Noue Development, LLC*, 357 Or 333, 359, 353 P3d 563 (2015). ORS 20.077 sets forth the procedure for determining the prevailing party "[i]n any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required."

properly be characterized as such), the fact remains that ORS 258.046(1) unequivocally expresses the legislature's intention that an election contest proceeding would (1) have a prevailing party—regardless of whether the proceeding involves a "claim"—and (2) the prevailing party would be entitled to a mandatory fee award. Contestor has not provided a developed argument before us as to why, under the circumstances of this case, CRW is not "the prevailing party in the contest proceeding," and, absent such argument, we have no basis to set aside the trial court's conclusion that CRW is the prevailing party.

Contestor's final argument on appeal is that the award of fees, under the *Noerr-Pennington* doctrine, violates his rights under the First Amendment to the United States Constitution. Broadly stated, the common-law *Noerr-Pennington* doctrine holds that a person who petitions the government for redress, including by filing litigation, generally cannot be held liable for damages for their petitioning conduct, even if that conduct might otherwise violate the antitrust laws or other statutes, unless the petitioning activity is a sham. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 US 49, 56-60, 113 S Ct 1920, 123 L Ed 2d 611 (1993). The doctrine serves to safeguard the First Amendment right to petition the government. *Id.* at 56. Contestor contends that the doctrine prohibits shifting CRW's fees to him because doing so would, in his view, make him liable for damages resulting from his litigation conduct.

We disagree for two reasons. First, the few courts to have considered the issue have declined to extend the doctrine to preclude awards of attorney fees under fee-shifting statutes. Those courts have reasoned—persuasively, in our view—that requiring a party to bear the costs of litigation is not the same thing as subjecting the party to liability for petitioning conduct, which is what the *Noerr-Pennington* doctrine prohibits. The Seventh Circuit has described as "startling" the proposition that the *Noerr-Pennington* doctrine would preclude the imposition of attorney fees under a fee-shifting statute, opining further that "the proposition that the first amendment, or any other part of the Constitution, prohibits or even has anything to say about

fee-shifting statutes in litigation seems too farfetched to require extended analysis. Fee shifting requires the party that creates the costs to bear them." *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F2d 358, 373 (7th Cir 1987). The California Supreme Court has reached the same conclusion. *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal 4th 53, 62-63, 52 P3d 685, 691 (2002); *see also Vargas v. City of Salinas*, 200 Cal App 4th 1331, 1344, 134 Cal Rptr 3d 244 (2011) (*Noerr-Pennington* doctrine does not preclude fee shifting).

Second, allowing for the possibility that the First Amendment's guarantee of the right to petition might impose some restriction on fee shifting in election contests or other direct challenges to governmental action—as distinct from litigation involving only private parties—"baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 US 731, 743, 103 S Ct 2161, 76 L Ed 2d 277 (1983). Here, the trial court found that contestor's claims were "without basis" and "objectively unreasonable," and there is some evidence to support that finding. Under such circumstances, the fee award against contestor does not present First Amendment concerns.

Affirmed.