Argued and submitted September 15, 2022, reversed and remanded with instructions to grant defendant's special motion to strike as to plaintiff's IIED and civil extortion claims, otherwise affirmed July 26, 2023

Andrew DAVOODIAN, MD,
an individual,
*Plaintiff-Respondent*,

*v.*

Crystal Lynn RIVERA,
an individual,
*Defendant-Appellant*.

Washington County Circuit Court
21CV12484; A176456

535 P3d 309

Plaintiff, Andrew Davoodian, MD, brought this civil action against defendant, Crystal Rivera, after she received a letter from her attorney advising him that she intended to file a civil complaint alleging that he had sexually assaulted her and seeking $2 million in damages. Plaintiff asserted three claims: one for intentional infliction of emotional distress (IIED), one for civil extortion, and one for a judgment declaring that defendant's claims based on the alleged sexual assault are time barred. Defendant filed a special motion to strike under ORS 31.150, Oregon's anti-SLAPP statute, which creates a procedure to dismiss an unfounded claim that arises out of the exercise of the constitutional right of petition in connection with an issue of public interest. The trial court denied the motion after determining that defendant failed to make the necessary *prima facie* showing that plaintiff's claims against her arose out of activity protected by ORS 31.150(2). Defendant appeals from the limited judgment denying her motion. *Held*: Defendant established that plaintiff's claims arose out of protected activity under ORS 31.150(2)(d), *viz.*, "conduct in furtherance of the exercise of the constitutional right of petition *** in connection with a public issue or an issue of public interest." Plaintiff has failed to establish that there is a probability that he will prevail on his tort claims by presenting substantial evidence to support a *prima facie* case on each claim. The Court of Appeals declined to address defendant's argument, raised for the first time in the reply brief, regarding plaintiff's declaratory judgment claim.

Reversed and remanded with instructions to grant defendant's special motion to strike as to plaintiff's IIED and civil extortion claims; otherwise affirmed.

Theodore E. Sims, Judge.

Elizabeth C. Savage argued the cause and filed the briefs for appellant. Also on the opening brief was Karmel Savage, PC.

Ruth A. Casby argued the cause for respondent. Also on the brief were Janet M. Schroer and Hart Wagner LLP.

Ashley L. Vaughn and Dumas & Vaughn, LLC, and Caitlin V. Mitchell and Johnson Johnson Lucas & Middleton P.C. filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded with instructions to grant defendant's special motion to strike as to plaintiff's IIED and civil extortion claims; otherwise affirmed.

## ORTEGA, P. J.

Plaintiff, Andrew Davoodian, MD, brought this civil action against defendant, Crystal Rivera, after he received a letter from her attorney advising him that she intended to file a civil complaint alleging that he had sexually assaulted her and seeking $2 million in damages. Plaintiff asserted three claims: one for intentional infliction of emotional distress (IIED), one for civil extortion, and one for a judgment declaring that defendant's claims based on the alleged sexual assault are time barred. Defendant filed a special motion to strike under ORS 31.150, Oregon's anti-SLAPP statute,[1] which, as pertinent here, creates a procedure to dismiss an unfounded claim that arises out of the exercise of the constitutional right of petition in connection with an issue of public interest. The trial court denied the motion after determining that defendant failed to make the necessary *prima facie* showing that plaintiff's claims against her arose out of activity protected by ORS 31.150(2). Defendant appeals from the limited judgment denying her motion.

We conclude that defendant established that plaintiff's claims arose out of protected activity under ORS 31.150(2)(d). Accordingly, we proceed to the second step of the inquiry, which the trial court did not reach, and further conclude that plaintiff has failed to establish that there is a probability that he will prevail on his tort claims by presenting substantial evidence to support a *prima facie* case on each claim.[2] We therefore reverse the limited judgment and remand with instructions to grant defendant's special motion to strike as to plaintiff's IIED and civil extortion claims.

We begin with a brief overview of ORS 31.150[3] and our standard of review. "ORS 31.150 provides a mechanism

---

[1] SLAPP stands for "strategic lawsuits against public participation."

[2] As we note below, although defendant's motion to strike challenged plaintiff's declaratory judgment claim, defendant failed to present an argument in her opening brief regarding the second step of the analysis on that claim and instead raised it for the first time in her reply brief, so we decline to address that argument.

[3] The legislature amended ORS 31.150 during the pendency of this appeal. *See* Or Laws 2023, ch 71, § 1 (effective Jan 1, 2024). Those changes do not affect our analysis, and we cite the current version of the statute.

for a defendant to move to strike certain nonmeritorious claims predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 313 Or App 19, 21, 496 P3d 22, *rev den*, 368 Or 788 (2021). The purpose of ORS 31.150 is "to provide for the dismissal of claims against persons participating in public issues, when those claims would be privileged under case law, before the defendant is subject to substantial expenses in defending against them." *Staten v. Steel*, 222 Or App 17, 29, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009); *see also Handy v. Lane County*, 360 Or 605, 612 n 4, 385 P3d 1016 (2016) (explaining that anti-SLAPP statutes "seek to minimize the effect of strategic suits intended to deter persons from expressing their views" by permitting "defendants who are targeted for their statements to end such suits quickly and with minimal expense").

A special motion to strike may be made against any claim in a civil action that arises out of:

"(a)  Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b)  Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c)  Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d)  Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

ORS 31.150(2). A defendant making a special motion to strike "has the initial burden of making a *prima facie* showing that the claim against which the motion is made arises out of" one of the four categories identified in ORS 31.150(2). ORS 31.150(3). If the defendant meets that burden to show that the plaintiff's claim is subject to a special motion to strike, the burden then shifts to the plaintiff "to establish

that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case" on each claim. *Id.* The court shall grant the motion unless the plaintiff meets that burden. ORS 31.150(1).

We review a trial court's ruling on a special motion to strike for legal error. *Mohabeer v. Farmers Ins. Exchange*, 318 Or App 313, 316, 508 P3d 37, *rev den*, 370 Or 212 (2022). In conducting that review, we "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS 31.150(4).

In October 2018, plaintiff asked defendant on a date via an online dating app and, according to plaintiff, the parties engaged in consensual sexual contact during that date. On March 5, 2021, defendant's attorney, Megan Johnson, mailed plaintiff a letter on law firm letterhead with the subject line "*Rivera v. Davoodian*, Pre-litigation, Multnomah County Circuit Court" and attached a copy of an unfiled draft of a civil complaint. Johnson identified herself as defendant's attorney and stated that "[t]he attached complaint is self-explanatory," and that she intended to file the complaint in Multnomah County Circuit Court on March 30, 2021. Johnson "urge[d]" plaintiff "to seek an attorney versed in these types of cases as soon as possible" and "have them contact" her.

The unfiled complaint attached to the letter alleged that defendant was a 33-year-old woman who met plaintiff in October 2018 on an online dating app; that plaintiff lied about his name and told defendant that he was an anesthesiologist at Oregon Health and Science University; and that plaintiff invited defendant on a date where plaintiff kissed defendant, lured her to his apartment by deception, locked her inside, sexually assaulted her, and threatened her. The unfiled complaint alleged claims for sexual battery, false imprisonment, and IIED, and it asserted that the claims were timely under ORS 12.117[4] and sought $2 million in economic and noneconomic damages.

---

[4] ORS 12.117(1) provides that "an action based on conduct that constitutes child abuse * * * that occurs while the person is under 18 years of age must be commenced before the person attains 40 years of age or * * * not more than five

On March 30, 2021, plaintiff initiated this action in Washington County Circuit Court alleging, among other things, that the allegations in defendant's unfiled complaint are false, that defendant knew they were false when the letter and unfiled complaint were sent to plaintiff, and that the letter and unfiled complaint "in effect threaten [p]laintiff that unless he pays [d]efendant money for her silence, the false allegations contained in the letter and the [unfiled c]omplaint would be publicly exposed, and [d]efendant would bring a civil lawsuit against [p]laintiff."

As to his IIED claim, plaintiff alleged that "[t]hrough the letter and the [unfiled c]omplaint, [d]efendant intended to inflict severe mental or emotional distress on [p]laintiff or knew with substantial certainty that her conduct would cause such distress" and that defendant's acts "constitute outrageous conduct and are an extraordinary transgression of the bounds of socially tolerable conduct." As to his civil extortion claim, plaintiff alleged that defendant "attempted to compel or induce [p]laintiff to deliver money to [d]efendant by instilling in [p]laintiff a fear that, if the money [d]efendant demanded was not so delivered, [d]efendant would expose an alleged secret or publicize an asserted fact intending to subject [p]laintiff to hatred, contempt, or ridicule." Finally, as to his claim for a declaratory judgment, plaintiff alleged that defendant's allegation in the unfiled complaint that her claims "are timely pursuant to ORS 12.117" is "frivolous" because that statute applies only to claims of child abuse and that defendant's claims are barred by the two-year statute of limitations under ORS 12.110(1).[5]

Defendant responded with a special motion to strike under ORS 31.150. Defendant argued that plaintiff's claims arise out of conduct protected by ORS 31.150(2)(d), specifically, that her drafting a civil complaint and mailing it to plaintiff prior to filing it are protected as part of her

_____

years from the date the person discovers *** the causal connection between the child abuse and the injury, whichever period is longer." *See also* ORS 12.117(2) (defining "child abuse").

    [5] ORS 12.110(1) provides, in relevant part, that "[a]n action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years."

right to petition the government, and that "allegations of forcible and non-consensual sexual assault at the hands of a (now) licensed medical professional whose specialty is anesthesia" is both a public issue and an issue of public interest.[6] Defendant also argued that plaintiff failed to present substantial evidence to support a *prima facie* case on each of his claims. Specifically, defendant argued that the IIED claim failed because her conduct was not outrageous, that the civil extortion claim failed because it is not a viable tort claim under Oregon law, that both the IIED and extortion claims failed because her conduct was protected by the litigation privilege, and that the declaratory judgment claim was moot.

In support of her special motion to strike, defendant submitted as exhibits copies of email correspondence between Johnson and plaintiff's attorney, John Kaempf. In one email dated March 25, 2021, Kaempf advised Johnson that plaintiff had retained him and that Johnson should communicate solely with Kaempf going forward. In another dated March 30, 2021, Johnson responded and asked whether Kaempf was authorized to accept service of the complaint. Defendant also submitted as an exhibit a copy of the complaint that she had filed in Multnomah County Circuit Court on April 1, 2021. The filed complaint differed from the unfiled complaint sent to plaintiff in only one respect: Defendant omitted the allegation regarding the timeliness of her claims under ORS 12.117 and replaced it with an allegation that the alleged acts were committed intentionally, knowingly, or recklessly and are each punishable as a crime in Oregon. Finally, Johnson submitted a declaration that averred that, in October 2018, it was reported to police that plaintiff had sexually abused defendant, police investigated the matter, and Johnson had received 11 pages from the police bureau regarding its investigation.

Plaintiff opposed defendant's special motion to strike. On the first step of the analysis, plaintiff argued that defendant's conduct was not protected by ORS 31.150(2)(d) for two reasons. First, plaintiff argued that the court should

---

[6] Defendant argued that her conduct was also protected by ORS 31.150(2)(a) and (b), but she does not advance those arguments on appeal.

apply the rule adopted by the California Supreme Court in *Flatley v. Mauro*, 39 Cal 4th 299, 317, 139 P3d 2 (2006),[7] that a special motion to strike "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." Plaintiff argued that defendant's conduct of sending the letter and unfiled complaint constituted extortion as a matter of law and therefore should not be protected under ORS 31.150(2). Second, plaintiff argued that defendant's claim that plaintiff sexually assaulted her is a private dispute and does not involve an issue of public interest because plaintiff is not a public figure and the alleged assault did not occur "in the public arena." Plaintiff also argued that if the court reached the second step of the analysis, he had presented substantial evidence to support a *prima facie* case on his claims. In support of his opposition to defendant's motion, plaintiff submitted a declaration that "everything stated in [plaintiff's c]omplaint is true."

The trial court heard argument on the motion and concluded that defendant had not met her initial burden to establish that her activity was protected by ORS 31.150(2)(d) because, while "obviously *** an important issue," it was "an issue between two private parties" and did not involve a public official or a public proceeding. The trial court therefore denied the motion without reaching the second step in the analysis.

On appeal, the parties renew and expand upon the arguments they made to the trial court. The parties also agree that, if we conclude that the trial court erred in the first step of the analysis, we may properly reach the second step. *See Mullen v. Meredith Corp.*, 271 Or App 698, 707, 353 P3d 598 (2015) (addressing the second step of the anti-SLAPP inquiry where the trial court did not because the question was fairly presented to the trial court

---

[7] "There is no dispute that Oregon modeled its anti-SLAPP statute on California's." *Handy,* 360 Or at 618. However, the statutes are not identical in every respect, and "[w]hile the legislature intended to follow the California cases that existed in 2001 [when it enacted ORS 31.150], California cases decided after 2001 are relevant, at most, only for their persuasive value." *Id.* at 618-23 & nn 10-12.

and the record was sufficiently developed to enable our review).

We first turn to whether defendant met her initial *prima facie* burden to show that plaintiff's claims "arise out of" conduct protected under ORS 31.150(2)(d), *viz.*, "conduct in furtherance of the exercise of the constitutional right of petition *** in connection with a public issue or an issue of public interest." We conclude that she did. As a preliminary matter, the parties do not dispute the "factual question" of what conduct plaintiff's claims arise out of, *Dept. of Human Services v. Lindsey*, 324 Or App 312, 319, 525 P3d 470 (2023), namely, defendant directing Johnson to draft a civil complaint and mail it, along with the letter, to plaintiff. As noted, plaintiff's complaint alleged that "[t]hrough the letter and the [unfiled c]omplaint" defendant intentionally inflicted emotional distress upon plaintiff and attempted to extort him out of $2 million. Further, plaintiff's declaratory judgment claim seeks to shield him from civil liability for the sexual assault allegations in the unfiled complaint.

The parties' dispute turns on whether defendant's conduct meets the legal standard set forth in ORS 31.150 (2)(d), that is, whether it was "in furtherance of the exercise of the constitutional right of petition" and "in connection with a public issue or an issue of public interest." Those legal questions are ultimately issues of statutory interpretation. In construing a statute, we examine the text of the statute in context, considering any relevant legislative history that a party may proffer, and, if necessary, applying maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Beginning with whether her conduct was "in furtherance of the exercise of the constitutional right of petition," defendant points out that litigation between private parties is protected petitioning activity. *See Clackamas County Oregon v. Clackamas River Water*, 280 Or App 366, 370, 382 P3d 598 (2016), *rev den*, 360 Or 752 (2017) (explaining that "a person who petitions the government for redress, including by filing litigation, generally cannot be held liable for damages for their petitioning conduct, even if that conduct

might otherwise violate the antitrust laws or other statutes, unless the petitioning activity is a sham" and that "[t]he doctrine serves to safeguard the First Amendment right to petition the government" (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 US 49, 56-60, 113 S Ct 1920, 123 L Ed 2d 611 (1993))). From that premise, defendant argues that "a communication made in anticipation of litigation is within th[e] category of speech that the legislature sought to protect when it enacted ORS 31.150(2)(d)." That follows, defendant contends, because the plain meaning of "in furtherance of" is to advance or promote, and because the legislature intended paragraph (2)(d) to be a "catchall provision meant to cover additional scenarios in which the right of free speech or petition is implicated" that are not directly covered by paragraphs (2)(a), (2)(b), or (2)(c). Under defendant's proposed rule, the letter from her attorney to plaintiff attaching the unfiled complaint is conduct "in furtherance of" protected petitioning activity because it "encompasses steps taken towards the ultimate exercise of that right." Finally, defendant argues that her proposed rule is consistent with our prior construction of ORS 31.150(2)(d) in *Mullen* and *Tokarski*.

Plaintiff argues that defendant's conduct of sending the letter and unfiled complaint was not "in furtherance of" her exercise of the right of petition within the meaning of paragraph (2)(d). Plaintiff contends that, viewing the evidence in the light most favorable to him, defendant sent the letter and unfiled complaint to plaintiff "to warn, and impliedly threaten, [plaintiff] that she would expose false and outrageous accusations of sexual assault and false imprisonment at a future date and time" and "to demand payment" of $2 million. From that premise, plaintiff argues that his claims arise from defendant's "tortious conduct committed in private" and do not target the exercise of her right to file a lawsuit. Finally, plaintiff argues that because the letter and unfiled complaint preceded defendant's petition to the court, under *Deep Photonics Corp. v. LaChapelle*, 282 Or App 533, 546-47, 385 P3d 1126 (2016), *rev den*, 361 Or 524 (2017), her conduct is merely "associated" with the right of petition and not "in furtherance of" that right.

Although we largely agree with defendant's analysis, we decline to adopt a categorical rule that ORS 31.150(2)(d) encompasses *all* communications made in anticipation of litigation. As we will explain, the text and context indicate that ORS 31.150(2)(d) protects conduct that advances or promotes the exercise of the right of petition that is not otherwise protected by paragraphs (2)(a) through (c). Whether conduct or communications that occur before litigation is formally initiated meets that standard will depend on the particular facts of each case.

We begin with the statutory text in context, which is the "best evidence" of what the legislature intended. *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 248, 503 P3d 1233 (2022). Because the legislature has not defined the phrase "in furtherance of," we typically give "terms of common usage" their "plain, natural, and ordinary meaning." *State v. A. R. H.*, 371 Or 82, 93, 530 P3d 897 (2023). "In" is "used as a function word to indicate activity, occupation, or purpose * * * <~ search of lost treasure> <~ honor of this event>." *Webster's Third New Int'l Dictionary* 1139 (unabridged ed 2002). And "furtherance" means "a helping forward : ADVANCEMENT, PROMOTION." *Id.* at 924. Thus, ORS 31.150(2)(d) protects conduct that advances or promotes the exercise of the constitutional rights of petition or free speech in connection with a public issue or an issue of public interest. That construction is consistent with our prior cases addressing ORS 31.150(2)(d). *See DeHart v. Tofte*, 326 Or App 720, 742-43, 533 P3d 829 (2023) (holding that encouraging others to engage in activity likely protected by the First Amendment is conduct "in furtherance of" the exercise of the right of free speech under paragraph (2)(d)); *Tokarski*, 313 Or App at 24-25 (holding that a decision to fund litigation is conduct "in furtherance of" the exercise of the right of petition under paragraph (2)(d)); *Mullen*, 271 Or App at 706 (explaining that conduct "in furtherance of" the exercise of rights protected under paragraph (2)(d) need not be necessary to the exercise of those rights).

Statutory context further supports that construction. ORS 31.150(2)(d) is the last of four listed categories of speech and conduct and applies to "any other conduct" in

furtherance of the exercise of the constitutional rights of petition and free speech. We thus understand ORS 31.150 (2)(d) to apply to conduct not expressly covered by paragraphs (2)(a) to (c) that is nonetheless "in furtherance of" the rights of petition and free speech and in connection to a public issue or an issue of public interest. The absence of a judicial proceeding is therefore not necessarily fatal. *Cf. Baldwin v. Seida*, 297 Or App 67, 76, 441 P3d 720 (2019) (construing ORS 31.150(2)(a) to encompass statements that are sent for consideration or presented for use in a court proceeding or a proceeding initiated to procure an order, decree, judgment, or similar action). Finally, ORS 31.152(4) expresses the legislature's intent that ORS 31.150 is "to be liberally construed in favor of the exercise of rights of expression described in ORS 31.150(2)."

Here, we conclude that defendant has made a *prima facie* showing that her particular conduct was "in furtherance of" the exercise of her right of petition because the evidence supports a determination that it facilitated the initiation of the lawsuit. The letter identifies its subject as "pre-litigation" between the parties, references the attached unfiled complaint as "self-explanatory," gives a specific date and time in which the complaint will be filed, and urges plaintiff to retain a lawyer and have them contact Johnson. The unfiled complaint seeks a judgment awarding defendant $2 million and demands a jury trial on the stated claims. On their face, the letter and unfiled complaint support a determination that defendant's conduct advanced the exercise of her right of petition by providing notice to plaintiff of her claims and an opportunity for him to retain counsel before she formally initiated the lawsuit. Further, in support of her special motion to strike, defendant submitted email correspondence between Johnson and Kaempf that provides additional context to the letter and unfiled complaint: Johnson asked whether Kaempf would be authorized to accept service of the complaint once it was filed. That additional context also supports a determination that defendant's conduct advanced the exercise of her right of petition by facilitating initiation of the lawsuit.

We reject plaintiff's contention that we must adopt his proffered *factual* narrative regarding the contents of

the letter and unfiled complaint and defendant's purpose in sending them in determining the *legal question* of whether defendant's conduct is protected by ORS 31.150(2)(d). Plaintiff is correct that our standard of review requires us to view the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *See Plotkin v. SAIF*, 280 Or App 812, 815-16, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017) ("[W]here there is a conflict between the parties' proffered factual narratives and evidence—and there are many in this case—we necessarily adopt the version most favorable to plaintiff, so long as it is supported by substantial evidence."). However, that standard applies in the first step of the burden-shifting framework under ORS 31.150(2) only as to the "factual question" of what conduct or statements the plaintiff's claim "arises out of." *Lindsey*, 324 Or App at 319 ("[I]n answering the factual question of what actions the claim arises out of, we view the evidence in the light most favorable to plaintiff, DHS, based on the affidavits submitted and the complaint."); *Deep Photonics*, 282 Or App at 545 ("Here, the parties dispute what the conduct is from which plaintiffs' claims 'arise out of.' As a result, we necessarily must view the evidence on that factual question in the light most favorable to plaintiffs."). But whether the defendant's conduct or statements meet the additional requirements of paragraphs (2)(a) through (d) presents a legal question that we review for errors of law. *C. R. v. Eugene School Dist. 4J*, 308 Or App 773, 781, 481 P3d 334 (2021) ("Viewing the declarations and depositions submitted by plaintiff in the light most favorable to plaintiff, they describe conduct or statements made outside of or after the disciplinary proceedings, or to persons who were not involved in the investigation of proceedings" and therefore were not protected by ORS 31.150(a) or (b).).

    We also reject plaintiff's arguments that defendant's conduct is not protected petitioning activity because, in plaintiff's view, it is "tortious" as a matter of law and because it preceded filing of the petition with the court. In determining whether a defendant has made a *prima facie* showing that their conduct is protected under ORS 31.150 (2)(d), this court "does not take into account whether the conduct on which a claim is predicated is wrongful." *Tokarski*,

313 Or App at 25. "Rather, the merits of a plaintiff's allegation that particular conduct is wrongful are taken into account when the court considers whether a plaintiff has made a *prima facie* case in support of a claim challenged by a special motion to strike" in the second step of the analysis. *Id.*; *see also Mullen*, 271 Or App at 705 ("The second part of the statutory inquiry in ORS 31.150(3) addresses the merits of the plaintiff's claim against the defendant and, necessarily, whether a *prima facie* case has been made as to the wrongfulness of the defendant's conduct. The first part of the inquiry aims merely to assess more generally what sort of claim this is."). And, as explained above, that defendant's conduct preceded her petition to the court is not, by itself, dispositive of whether it is protected under paragraph (2)(d).

Nor are we persuaded by plaintiff's reliance on *Deep Photonics*. In that case, we concluded that the defendants did not meet their burden that ORS 31.150(2)(d) applied to the plaintiffs' claims because the defendants failed to explain how the relevant conduct was "in connection with a public issue or an issue of public interest." 282 Or App at 542. We also rejected the defendants' argument that ORS 31.150 (2)(b) applied and, in doing so, did not reject California case law that extended anti-SLAPP protection to communications made in anticipation of litigation, but instead declined to decide whether to adopt it because we concluded that the defendants' argument failed under that case law. *Id.* at 544-47. We also cautioned that only case law that existed at the time the legislature enacted ORS 31.150 could be determinative of the legislature's intent. *Id.* at 543 n 5; *see also Handy*, 360 Or at 623 n 12 ("[W]hat our statute means turns on what the Oregon legislature understood in 2001 when it enacted ORS 31.150(3)."). We have since rejected broad suggestions that we should adopt post-2001 California case law in our construction of ORS 31.150. *See Baldwin*, 297 Or App at 76 n 6 (rejecting as unpersuasive California cases decided after the adoption of ORS 31.150 in construing ORS 31.150(2)(a)). To the extent plaintiff argues that we should adopt the California Supreme Court's decision in *Flatley* for purposes of construing ORS 31.150(2)(d), we decline to do so. Again, as a case decided after the legislature enacted ORS 31.150, *Flatley* is "relevant, at most, for [its] persuasive

value." *Handy*, 360 Or at 623 n 12. Further, its holding is contrary to our prior construction of ORS 31.150 in *Tokarski* and *Mullen* that the alleged wrongfulness of a defendant's conduct is not relevant to whether the defendant met their *prima facie* burden to show that their conduct is protected by ORS 31.150(2) under the first step of the analysis.

We next turn to whether defendant's conduct was "in connection with a public issue or an issue of public interest." Defendant argues that her unfiled complaint alleged that plaintiff had sexually assaulted her and that both sexual assault generally and, more particularly, "whether a licensed medical practitioner at an esteemed local hospital was preying on women he met online" are of interest to the community at large.

Plaintiff responds that the trial court correctly concluded that, while sexual assault is generally "an important issue," it is not a public issue or an issue of public interest because "the matter at issue and not merely the generalized subject must be of public interest." Plaintiff contends that "[t]here is no evidence in the record to support that [he] was a 'licensed medical practitioner' or that he 'was preying on women,'" and he argues that ORS 31.150(2)(d) does not shield from civil liability "private communication concerning two private individuals about conduct that allegedly occurred on their personal time."

We agree with defendant. A court examines "the content, form, and context" of statements to determine whether the statements "involve matters of public concern" such that they are protected under the First Amendment. *Neumann v. Liles*, 358 Or 706, 720, 369 P3d 1117 (2016) (*Neumann II*) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 US 749, 761, 105 S Ct 2939, 86 L Ed 2d 593 (1985)). In *Neumann II*, the court held that the defendant's online review of a wedding venue involved "a matter of public concern" for purposes of the First Amendment because the review "was posted on a publicly accessible website, and the content of [the] review related to matters of general interest to the public, particularly those members of the public who are in the market for a wedding venue." *Id*. On remand, we adopted that reasoning to conclude that the defendant's

review was in connection with an "issue of public interest" for purposes of ORS 31.150(2)(d). *Neumann v. Liles*, 295 Or App 340, 345, 434 P3d 438 (2018), *rev den*, 365 Or 195 (2019) (*Neumann III*). We explained that "[n]othing in the text, context, or legislative history of ORS 31.150 suggests that the legislature intended the phrase 'issue of public interest' to be understood in any way other than its common-sense meaning" and that, "[u]nder that common-sense meaning, an 'issue of public interest' is one that is of interest to the public." *Id.*

The same reasoning applies here. It is true that, unlike the online review in *Neumann*, the letter and unfiled complaint here were communicated privately, but the subject matter of that communication—civil claims arising from an alleged sexual assault by a person who identified himself on an online dating app as an anesthesiologist at Oregon Health and Science University (OHSU)—was similarly "related to a matter of general interest to the public," and particularly those members of the public who are using online dating apps or need anesthesia at OHSU. *See Lowell v. Wright*, 369 Or 806, 852, 512 P3d 403 (2022) (Balmer, J., concurring) (explaining that *Neumann II* "readily conclude[d]" that the online review involved matters of public concern "due to the clarity with which the court understood that the character and reputation of a local business can be of great importance to members of the surrounding community, regardless of whether they are consumers of that business's products or services"). Contrary to the trial court's reasoning, whether plaintiff is a public figure is not determinative of whether defendant's conduct was in connection with an issue of public interest. *See Mullen*, 271 Or App at 704-06 (concluding that the trial court erred in focusing "on whether [the] plaintiff was a public figure whose identity could be a matter of public interest"); *Lowell*, 369 Or at 827-29 (reaffirming *Neumann II*'s holding that a negative online review of a wedding venue involves a matter of public concern and observing that "[t]he touchstone principle in evaluating whether speech is on a matter of public concern is whether the speech must be protected to ensure the continuance of vigorous debate on public issues and, by extension, self-governance"). We therefore conclude that defendant has

made a *prima facie* showing that her conduct was "in connection with * * * an issue of public interest" because the evidence supports a determination that sending a letter and draft complaint alleging civil claims arising from an alleged sexual assault by a self-identified employee of a prominent public hospital was related to a matter of general interest to the public and that that speech should be protected to ensure continued discourse on public issues.

Having concluded that defendant met her initial burden of showing that plaintiff's claims are subject to a special motion to strike, we next turn to whether plaintiff has established that there is a probability that he "will prevail on the claim by presenting substantial evidence to support a *prima facie* case" on each claim. ORS 31.150(3). ORS 31.150(3) requires a plaintiff to "submit sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Handy*, 360 Or at 622-23. A plaintiff fails to carry that burden when the plaintiff fails to present evidence from which a reasonable trier of fact could find that the plaintiff has established the elements of the claims. *Id.* at 626. We conclude that plaintiff has failed to meet that burden with respect to the IIED and civil extortion claims.

We first address plaintiff's IIED claim. To prevail on a claim for IIED, a plaintiff must show that: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995). "Because proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort largely turns on * * * whether a defendant's conduct is sufficiently outrageous." *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730, *rev den*, 345 Or 381 (2008). Whether conduct is "an extraordinary transgression" is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances. *Id.* at 358-59. And whether the offensiveness of the conduct "exceeds any reasonable limit of social toleration" is "a judgment of

social standards rather than of specific occurrences." *Id.*
(quoting *Hall v. The May Dept. Stores*, 292 Or 131, 137,
637 P2d 126 (1981), *overruled in part on other grounds by
McGanty*, 321 Or at 548).

Defendant argues that no reasonable factfinder
could conclude that her conduct was "outrageous" due to the
lack of a special relationship, alleged or proven, and because
her conduct is protected by litigation privilege. In response,
plaintiff does not dispute that no special relationship existed
between the parties. Instead, plaintiff first argues that,
viewing the evidence in the light most favorable to him, the
letter and unfiled complaint, together with his declaration
that everything stated in his complaint is true, show that
defendant made accusations that she knew were false to
threaten and to scare plaintiff into believing that defendant
would publicly expose the false allegations unless plaintiff
paid defendant $2 million for her silence. In plaintiff's view,
"publishing false allegations of sexual misconduct or false
reports of criminal conduct exceeds the bounds of socially
tolerable conduct." Second, plaintiff argues that the litiga-
tion privilege is inapposite because, in his view, ORS 31.150
does not require a plaintiff to produce evidence capable of
defeating affirmative defenses to establish a *prima facie*
case.

We again largely agree with defendant. "The rela-
tionship between the parties has particular bearing on
potential characterization of the conduct as extreme or out-
rageous." *Delaney v. Clifton*, 180 Or App 119, 130, 41 P3d
1099, *rev den*, 334 Or 631 (2002). A plaintiff must generally
allege and prove that the defendant's "position or role *vis-à-
vis*" the plaintiff was one that "imposes on the defendant a
greater obligation to refrain from subjecting [the plaintiff]
to abuse, fright, or shock than would be true in arm's-length
encounters among strangers." *Id.* (internal quotation marks
and citations omitted). "[T]he lack of such a relationship
generally defeats a conclusion that the conduct is actionable
through an IIED claim." *Id.* at 130-31 & n 7.

Here, the parties were strangers who met online
and went on a single date. Plaintiff did not allege or sub-
mit evidence that a special relationship existed between

the parties; rather, the facts alleged establish that none existed. The lack of a special relationship between the parties distinguishes this case from the first case upon which plaintiff relies. *See Hall*, 292 Or at 141 (concluding that an employer's security personnel's "deliberate and systematic tactic to threaten and frighten [an] employee into a confession" for theft took the "plaintiff's case over the threshold into the range within which the jury could decide that defendants' method of interrogation was an extraordinary transgression of contemporary standards of civilized conduct toward an employee"). The second case, *Kraemer v. Harding*, 159 Or App 90, 111, 976 P2d 1160, *rev den*, 329 Or 357 (1999), involved parents' repeated public allegations to a school board that the plaintiff bus driver was a child sex abuser—allegations that persisted even though multiple investigations concluded that no inappropriate conduct had occurred. By contrast, here, although defendant threatened to publish the unfiled complaint by filing it in Multnomah County Circuit Court, and the allegations are sufficiently stigmatizing and would have particularly damaging effect on plaintiff's personal and professional reputation, there is no allegation or evidence that she repeated false allegations despite their being disproven in multiple investigations or in a court of law.[8] Further, *Kraemer* involved statements that were only conditionally privileged, and that privilege was lost because the jury could have inferred that the defendants did not believe or lacked reasonable grounds to believe that the accusations were true. *See id.* at 107-08. Here, even assuming, as we must, that defendant's allegations are false and she knew they were false when she sent the letter and unfiled complaint, those statements are nonetheless absolutely privileged, as we will now explain.

Turning to the litigation privilege, plaintiff is correct that we have not yet addressed whether ORS 31.150(3) requires a plaintiff to produce evidence capable of defeating affirmative defenses in order to meet their *prima facie* burden at the second step of the anti-SLAPP analysis. *See Plotkin*, 280 Or App at 829 (noting that we have yet to address that

---

[8] Indeed, plaintiff apparently raced defendant to the courthouse steps to file this action before defendant had an opportunity to prove her allegations in an appropriate public forum.

issue). However, we need not decide that question in this case because "[a]ny 'judgment of social standards' requires, *in the first instance*, an evaluation of whether the conduct in question is favored or made privileged by law, or disfavored or made unlawful by the legislature." *House*, 218 Or App at 359 (emphasis added). In other words, whether defendant's conduct is privileged factors into the totality of the circumstances we consider in determining whether the conduct is extreme and outrageous, one of the elements of IIED on which plaintiff bears the burden to establish a *prima facie* case. *See also Franson v. Radich*, 84 Or App 715, 718-19, 735 P2d 632 (1987) (explaining that "ordinarily, absolute privilege is an affirmative defense that must be raised by answer" but that "it may be raised by motion to dismiss if the amended complaint alleges facts which, if true, establish the privilege" and extending that principle to claims of IIED (footnote omitted)).

"Oregon courts have long recognized, and enforced, an absolute privilege for statements in the course of or incident to judicial and quasi-judicial proceedings. That privilege applies equally to parties to such proceedings and to their attorneys." *Mantia v. Hanson*, 190 Or App 412, 417, 79 P3d 404 (2003) (collecting cases). The privilege is

> "based upon the ground that there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them."

*Ramstead v. Morgan*, 219 Or 383, 387, 347 P2d 594 (1959) (internal quotation marks and citation omitted). The privilege applies to "statements or writings made during or as part of the litigation itself" and to "similar statements which are made by a lawyer outside of the pleadings and actual trial of the case" if the statements or writings have "some relation" thereto. *Chard v. Galton*, 277 Or 109, 113, 559 P2d 1280 (1977) (holding that a lawyer's statement in a pre-litigation letter to the plaintiff's insurer was absolutely privileged where it had some relation to the proposed litigation). Here, the statements in defendant's letter and unfiled

complaint had some relation to her proposed lawsuit against plaintiff and were therefore absolutely privileged.[9]

We therefore conclude, under the totality of the circumstances, that no reasonable factfinder could conclude that defendant's conduct exceeds "any reasonable limit of social toleration." Accordingly, plaintiff failed to meet his burden as to his IIED claim.

We next address plaintiff's civil extortion claim. Plaintiff acknowledges, as he did to the trial court, that no Oregon appellate court has recognized a common-law claim of civil extortion. In plaintiff's view, he met his burden because he argued below that "the correct result would infer a civil cause of action from Oregon's criminal extortion statute, ORS 164.075," and because his complaint "tracks ORS 164.075."

We need not decide whether to recognize a civil cause of action for extortion because we conclude that plaintiff has failed to meet his burden even under his own proposed rule. Plaintiff has failed to explain—either below or on appeal—how defendant's conduct constitutes extortion under the operative version of ORS 164.075. In his response to defendant's special motion to strike, plaintiff relied on ORS 164.075(1)(e) (2016) (defining the crime of "theft by extortion" as, among other things, compelling or inducing another to deliver property by instilling in the other a fear that, if the property is not so delivered, the actor will in the future "[e]xpose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule"). But the legislature amended ORS 164.075 to omit that theory of extortion before plaintiff's claim arose. *See* Or Laws 2016, ch 47, § 2 (effective

---

[9] We have recognized two exceptions to absolute privilege: wrongful use of civil proceedings and intentional interference with economic relations when the "improper means" is wrongful use of civil proceedings. *See Mantia*, 190 Or App at 419-29 (explaining that "an absolute privilege [is] not absolute" when "[a]n actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation" of civil proceedings or when "the prosecution of unfounded litigation constitutes actionable 'improper means' for purposes of tortious interference" with economic relations). However, one element of wrongful initiation of civil proceedings is that the allegedly wrongful proceedings were terminated in favor of the plaintiff pursuing a wrongful initiation claim. *Id.* at 419.

Jan 1, 2017). As a result, the theory of criminal extortion on which plaintiff has relied throughout this litigation to infer a civil extortion claim was not operative at the time of defendant's conduct. On appeal, plaintiff does not address that issue or attempt to explain how it would affect our decision to infer a civil cause of action from ORS 164.075 or whether defendant's conduct constitutes extortion under the current version of the statute. We therefore reject plaintiff's argument.

Finally, although defendant's motion to strike challenged plaintiff's declaratory judgment claim, defendant failed to present an argument regarding the second step of the analysis on that claim in her opening brief on appeal and instead raised it for the first time in her reply brief. Accordingly, we decline to address it.[10] *State v. Thomas*, 324 Or App 114, 119, 524 P3d 969 (2023) (declining to consider an argument raised for the first time in a reply brief).

Reversed and remanded with instructions to grant defendant's special motion to strike as to plaintiff's IIED and civil extortion claims; otherwise affirmed.

---

[10] However, we note that, contrary to plaintiff's contention that defendant's claims are barred by the two-year statute of limitations under ORS 12.110(1), that statute appears to be inapposite because, "[n]otwithstanding ORS 12.110, *** an action based on conduct that constitutes sexual assault *** that occurs when a person is 18 years of age or older must be commenced within five years from the date the person discovers *** the causal connection between the sexual assault and the injury." ORS 12.118(1); *see also* ORS 12.118(2) (defining "sexual assault"). Although the legislature enacted ORS 12.118 in 2019, it expressly "applies to all actions commenced on or after the effective date of this 2019 Act." Or Laws 2019, ch 448, § 3 (effective June 20, 2019).